INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
2020 OK 56
Case Number: 117081
Decided: 06/23/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 56, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

INDEPENDENT SCHOOL DISTRICT # 52 OF OKLAHOMA COUNTY (Midwest City-Del City); INDEPENDENT SCHOOL DISTRICT #57 OF GARFIELD COUNTY (Enid); INDEPENDENT SCHOOL DISTRICT #71OF KAY COUNTY (Ponca City); and INDEPENDENT SCHOOL DISTRICT #89 OF OKLAHOMA COUNTY (Oklahoma City), Plaintiffs/Appellants,

v.
JOY HOFMEISTER, Superintendent of Oklahoma State Department of Education; OKLAHOMA TAX COMMISSION; and KEN MILLER, Oklahoma State Treasurer, Defendants/Appellees,
and
TULSA PUBLIC SCHOOL DISTRICT, I-1 OF TULSA COUNTY; SAND SPRINGS PUBLIC SCHOOL DISTRICT, I-2 OF TULSA COUNTY; BROKEN ARROW PUBLIC SCHOOL DISTRICT, I-3 OF TULSA COUNTY; BIXBY PUBLIC SCHOOL SYSTEM, I-4 OF TULSA COUNTY; JENKS PUBLIC SCHOOL DISTRICT, I-5 OF TULSA COUNTY; UNION PUBLIC SCHOOL DISTRICT, I-9 OF TULSA COUNTY and OWASSO PUBLIC SCHOOL DISTRICT, I-11 OF TULSA COUNTY and OKLAHOMA PUBLIC CHARTER SCHOOL ASSOCIATION, Intervenor Defendants/Appellees,
and
WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT NO. 1-41 OF OKLAHOMA COUNTY, Plaintiff,
v.
THE STATE OF OKLAHOMA ex rel., OKLAHOMA STATE DEPARTMENT OF EDUCATION; OKLAHOMA STATE BOARD OF EDUCATION; JOY HOFMEISTER, State Superintendent of Public Instruction for The State of Oklahoma; OKLAHOMA TAX COMMISSION; and KEN MILLER, Oklahoma State Treasurer, Defendants/Appellees.

APPEAL FROM DISTRICT COURT OF OKLAHOMA COUNTY

¶0 School Districts filed an action in District Court and alleged they received insufficient State Aid payments for the years 1992-2014. They sought writs of mandamus to compel defendants to demand and recoup excessive State Aid payments made to other school districts, and then pay the correct apportionments to plaintiffs. Plaintiffs sought summary judgment and intervenors, school districts in Tulsa County, sought summary judgment against plaintiffs. The Honorable Thomas Prince, District Judge, granted intervenors' motion for summary judgment and concluded the defendants did not have a duty to seek repayment of excessive State Aid payments made to other schools until an audit was performed by auditors approved by the State Auditor and Inspector. Plaintiffs appealed and the Supreme Court retained the appeal. We hold: The audit used by the State Board of Education when demanding repayment must be performed by auditors approved by the State Auditor and Inspector. A school district possesses a legal right to a proper apportionment of State Aid regardless of excessive payments made to other districts. A school district lacks a cognizable legal interest and standing in a claim to compel the State Board of Education to fund a lapsed appropriation. Plaintiffs' filings raise the issue of their standing to judicially compel legislative appropriations. Standing must be adjudicated on remand.

DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART
AND CAUSE REMANDED FOR FURTHER PROCEEDINGS

Joe E. Edwards, Clyde A. Muchmore, and Mary H. Tolbert, Crowe & Dunlevy, Oklahoma City, Oklahoma, for Plaintiffs/Appellants, Independent School District No. 52 of Oklahoma County (Midwest City-Del City), Independent School District No. 57 of Garfield County (Enid), Independent School District No. 71 of Kay County (Ponca City), and Independent School District No. 89 of Oklahoma County (Oklahoma City).

A. Scott McDaniel, Stacy L. Acord, McDaniel Acord, PLLC, Tulsa, Oklahoma, for Intervenor Defendants/Appellees, for Tulsa Public School District I-1 of Tulsa County, Sand Springs Public School District I-2 of Tulsa County, Broken Arrow Public School District I-3 of Tulsa County, Bixby Public School System I-4 of Tulsa County, Jenks Public School District I-5 of Tulsa County, Union Public School District I-9 of Tulsa County, and Owasso Public School District I-11 of Tulsa County.

Melissa Oxford, Tulsa, Oklahoma, for Intervenor Defendants/Appellees, for Tulsa Public School District I-1 of Tulsa County, Sand Springs Public School District I-2 of Tulsa County, Broken Arrow Public School District I-3 of Tulsa County, Bixby Public School System I-4 of Tulsa County, Jenks Public School District I-5 of Tulsa County, Union Public School District I-9 of Tulsa County, and Owasso Public School District I-11 of Tulsa County.

Mithun Mansinghani, Solicitor General, and Michael Velchik, Asst. Solicitor General, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma, for Defendants/Appellees.

William H. Hickman, Hickman Law Group, PLLC, Norman, Oklahoma, for Intervenor/Appellee, Oklahoma Public Charter School Association.

EDMONDSON, J.

¶1 This case involves the procedure specified in 70 O.S. § 18-118. This statute is used when the State Board of Education requires a school district to return to the Board an excessive payment of State Aid funds. Plaintiffs are allegedly owed State Aid funds and they seek to compel the State Board of Education to audit other schools, demand return of funds, collect funds, and then pay some of these funds to plaintiffs. We read plaintiffs' petition as seeking to compel the State Board of Education to seek an audit from the State Auditor and Inspector. We agree with the trial court that 70 O.S. § 18-118 requires an audit by auditors approved by the State Auditor and Inspector when the Board demands a return of State Aid funds pursuant to the statute.

¶2 The parties raised the issue whether plaintiffs' claims were justiciable and barred by the political question doctrine, but they did not address the plaintiffs' standing to bring their claims. The State Board of Education has a statutory duty to make the correct apportionment to a particular school district regardless of excessive amounts paid to a different school district, and a school district's right to receive the proper apportionment is not necessarily contingent upon the Board's recovery of improper amounts paid to other school districts. A school district lacks a cognizable legal interest and standing in a claim to compel the State Board of Education to fund a lapsed appropriation.

¶3 A standing issue is presented on whether plaintiffs possess a cognizable legal interest in legislatively appropriated funds. The issue of plaintiffs' right to compel the State Board to seek a proper audit, or demand and collect funds from other school districts is premature and may not be adjudicated in this appeal.

I. Case Summary

¶4 School districts located in Midwest City/Del City, Enid, Ponca City, and Oklahoma City[1] commenced a legal proceeding in the District Court of Oklahoma County. They sought mandamus relief for several purposes including the payment of additional State Aid funds. The named defendants in the petition were: "Joy Hofmeister, Superintendent of Oklahoma State Department of Education," (OSDE); (2) "Oklahoma Tax Commission," and (3) "Ken Miller, Oklahoma State Treasurer." The schools alleged they had received less State Aid funds between 1992 and 2014 because the OSDE used an incorrect assessment rate in its calculations for State Aid. A fifth school district located in Oklahoma County, Western Heights,[2] filed a separate action in the District Court of Oklahoma County and against the OSDE and others.[3] This school district also sought mandamus relief and additional State Aid funds.[4] Defendants filed an unopposed motion to consolidate the two proceedings in District Court and the court granted the motion.

¶5 An unopposed motion to intervene was filed by seven school districts located in Tulsa County.[5] They intervened as defendants and filed an Answer to the petitions filed by the plaintiffs.[6] The Oklahoma Public Charter School Association (OPCSA) filed a motion to intervene and it was granted by the trial court.

¶6 Plaintiffs filed a motion for summary judgment. They argued the OSDE had agreed plaintiffs had received less than the proper amount of State Aid funds they were entitled to during the years 2004-2014. Plaintiffs argued the OSDE was required to recoup the State Aid funds overpaid to other school districts, and then apportion those funds to school districts such as plaintiffs. They argued their claim was not barred by laches or a three-year statute of limitations.

¶7 State entities argued the case "is about whether there is a clear duty [by mandamus] on SBE [State Board of Education] to take action to withhold payments from some schools and apply those payments to other schools." They argued the summary judgment requested by plaintiffs sought relief against the Oklahoma State Department of Education but not the Oklahoma Tax Commission, Treasurer for the State of Oklahoma, or the Oklahoma State Board of Education. They argued the State Board of Education had certain statutory duties and not the State Department of Education. They then argued the State Board of Education's statutory duty had not been "triggered" because an audit by auditors approved by the State Auditor and Inspector had not been performed. Defendants also asserted laches, and alleged plaintiffs knew for twenty years how the State Aid was supposed to be apportioned, and for at least ten years prior to commencing their legal action knew or suspected that State Aid was incorrectly calculated.

¶8 Intervenors (Tulsa County Schools) filed a motion for summary judgment against plaintiffs. They characterized plaintiffs' action as seeking to (1) correct alleged errors in calculating State Aid to every public school district in the State for a twenty-two year period, 1992-2014, and (2) recoup payments from hundreds of school districts by reducing their current State Aid payments and then transferring these funds to plaintiffs. The Tulsa County school districts argued the plaintiffs "had all the information at their disposal to discern they had been shorted State Aid by no later than 1993, and they did nothing" to correct the error. They asserted laches as a defense. They asserted plaintiffs' claims "present a non-justiciable political question." They also asserted all school districts in the State which received overpayments of State Aid during 1992 - 2014 must be joined as necessary parties.

¶9 Plaintiffs responded to the motion for summary judgment filed by the intervenors. Plaintiffs objected to the assertion they possessed "actual knowledge" for many years of the "calculation errors" committed by the OSDE. Plaintiffs asserted they did not have the means to discover miscalculations in the State Aid formula. They objected to classifying the legal controversy as a non-justiciable political question.

¶10 Intervenors (Tulsa County) replied to plaintiffs' motion and plaintiffs replied to intervenors' motion for summary judgment. An intervening defendant, Oklahoma Public Charter School Association (OPCSA), filed an objection to plaintiffs' motion for summary judgment. The OPCSA argued State Aid "is the sole revenue source for educating children at a charter school." The Association sought "as an initial matter," a legal determination "if charter schools are school districts for purposes of funding to determine whether charter schools may be impacted by any relief that may be granted plaintiffs."[7] They argued the Oklahoma State Board of Education is "interpreting and implementing the school funding law to deny charter schools Local Revenue sources, including CAPP." They argued "a reduction of State Aid has a greater proportional impact on charter schools than other public schools."

¶11 The trial court concluded no duty existed for the OSDE to initiate a 70 O.S. § 18-118 authorized recoupment process from school districts such as those in Tulsa County. The trial court ruled section 18-118 required an audit by auditors approved by the State Auditor and Inspector, and such an audit had not been performed. The trial court concluded a writ of mandamus would not issue and granted the motion for summary judgment filed by intervenors (Tulsa County schools).

¶12 Plaintiffs filed a "motion for reconsideration" and argued their request for mandamus was sufficiently broad to include a request requiring the OSDE to seek an audit from the State Auditor and Inspector.[8] Defendants responded and argued plaintiffs had changed the nature of their mandamus request after issuance of the court's summary judgment. The motion for reconsideration was denied, plaintiffs appealed the judgment, and the appeal was retained for adjudication by this Court.

II. Summary of Issues on Appeal and Standard of Review

¶13 In summary, the issues on appeal are limited in scope to the issues before the trial court which were adjudicated on summary judgment and then preserved in plaintiffs' motion for new trial. Secondly, the issues addressed are limited to those necessary to the nature of the trial court's judgment as modified by this Court on appeal. The issues on appeal must include a jurisdictional issue raised on the face of plaintiffs' filings, and this Court will direct the District Court to make the necessary findings and conclusions on remand when necessary to adjudicate a jurisdictional issue.

¶14 A "motion to reconsider" does not technically exist within Oklahoma's statutory nomenclature, this Court looks to the content and substance of a motion rather than its title to determine how the motion is treated, and a motion to reconsider may be treated as a motion for a new trial pursuant to 12 O.S. § 651.[9] Plaintiffs' motion to reconsider argued the trial court's decision was contrary to law with alleged specific defects, a ground specified in 12 O.S.2011 § 651(6).[10] A party who files a motion for new trial must raise therein the issues the party seeks to use as assignment of error in a subsequent appeal.[11] The trial court adjudicated whether an audit by auditors approved by the State Auditor and Inspector was necessary before the State Board of Education has a duty to seek recoupment of excess State Aid funds paid to a school district. This issue construed 70 O.S.2011 § 18-118 and is before us on appeal.

¶15 Plaintiffs' right to compel both a statutorily-defined accounting pursuant to 70 O.S. § 18-118 and additional payment of State Aid funds was challenged as nothing more than a political question lacking justiciability. Standing is jurisdictional, and we explain herein a school district possesses a legal interest to compel payment of State Aid funds in certain circumstances, and in certain circumstances standing is absent and a political question is present. The scope of a school district's legal interest when seeking State-appropriated funds is limited by mandatory law which is created by either the Oklahoma Constitution or statutory enactment. We lack the appropriate record and arguments to adjudicate standing as to plaintiffs, and the standing adjudication is left for a decision on remand based upon the principles we explain.

¶16 Plaintiffs' cite the mandamus statute, 12 O.S. § 1451,[12] invoking a special procedure not statutorily controlled by the Oklahoma Pleading Code.[13] Mandamus is a special proceeding invoking equity.[14] A standard of review applied in an appeal is based upon the nature of the decision made by the trial court, e.g., a decision based on law, fact, mixed law and fact, as well as the nature of the action (law versus equity), and the procedural context of the decision, such as dismissal of an insufficient petition, a summary judgment, directed verdict, judgment on a jury verdict, motion for new trial, etc.[15]

¶17 Application of the appellate abuse-of-discretion standard for reviewing a motion for new trial uses a de novo review when examining the correctness of an alleged erroneous conclusion of law.[16] Mandamus is tried as in civil actions and the merits may be adjudicated using the District Court Rule 13 procedure for summary judgment or summary disposition.[17] Further, an issue of law is presented by questions concerning the application of a statute to an uncontested fact, and de novo appellate review is used by the Court.[18] This de novo standard is consistent with de novo review of an error of law in the context of a motion for new trial as well as our appellate review of a summary judgment which we have explained is a de novo and nondeferential review.[19]

¶18 The trial court relied on 70 O.S. § 18-118, and concluded one of the elements necessary to obtain mandamus was absent. The court stated the defendants did not have a plain legal duty. The absence of this plain legal duty was adjudicated in the context of plaintiffs' alleged statutory right to compel this duty by mandamus. The summary judgment herein construed 70 O.S. § 18-118 to determine the absence of a statutory duty. The trial court's decision is reviewed de novo.

III. Special Audit by State Auditor and Inspector on Appeal and Judicial Notice.

¶19 Plaintiffs filed a "Notice of Report by State Auditor and Inspector" as a "subsequent development relevant to the Court's review of this appeal." The Notice references an article published in a newspaper and has an attached photocopy of a "Special Audit Report" for Western Heights Public School District. This audit states it is authored by the Oklahoma State Auditor and Inspector.

¶20 Intervenors filed a motion to strike appellant's Notice of Report, etc. Appellees argued the newspaper article and Special Audit Report were not before the trial court. Appellees also argue the Special Audit Report states Western Heights Public Schools experienced a State Aid funds shortfall for fiscal years 2004 through 2014. However, Western Heights School District is not a party to this appeal, and the audit does not address State Aid funds for any other school district, including the plaintiffs in this appeal. Appellees argued the Special Audit Report was not proper for judicial cognizance by judicial notice.

¶21 Plaintiffs responded and stated the Court should take judicial notice of the report by the State Auditor and Inspector. Plaintiffs have filed a photocopy of the audit with the Court. The audit is found on the official website for the State Auditor and Inspector.[20] ¶ 22 In federal court, judicial notice of fact may occur when the fact is not subject to reasonable dispute and it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[21] The Oklahoma statute has similar language.[22] Some federal courts have stated a court may take judicial notice of an indisputably accurate fact[23] on the world wide web (or internet),[24] and public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies may be used for the purpose of judicial notice.[25] Some federal courts have also concluded public agency actions, factfinding, and decisions may be appropriate for judicial notice.[26]

¶23 Plaintiffs argue the State Auditor's report on Western Heights School District "effectively approved the overall recalculation performed by the OSDE." Appellants argue Western Heights School District did not receive its proper funding and "this necessarily means that other districts were overpaid," because State Aid to one district must be offset by an equal reduction in State Aid to one or more districts."[27] The motion to strike is denied, we take judicial notice of the audit, and use it as cited herein.

IV. State Aid Controversy

¶24 State Aid funds are State funds appropriated by the Legislature[28] and distributed to school districts.[29] The initial calculation of State Aid to be distributed to a school district is based on a formula which uses the number of students attending the school district and the grade they are enrolled in for that year, number of special education students and economically disadvantaged students, additional specified programs, transportation needs for certain districts, and a comparison of the current number of students with the number for the previous two years.[30] This initial calculation includes consideration of funds attributed to ad valorem tax revenues used to determine state-wide factors for State Aid (including statutorily specified school Foundation Aid and Salary Incentive Aid).[31] The amount of State Aid is reduced by an amount of public local revenues attributed to the school district. This local revenue is referred to as "chargeable revenue" or "chargeable valuations," and is revenue charged against or subtracted from a calculation of a school district's amount of State Aid.

¶25 The State Aid formula statutes were amended several times in the decade leading up to the 1991 decennial version of the statute, i.e., 1982, 1983, 1984, 1986, 1989, and 1990. For example, during the 1980s 70 O.S. § 18-109.1 was designed to reflect the changes to assessment ratios in counties coming into compliance with guidelines for assessment ratios established by this Court, and to also provide for greater equalization of State Aid with respect to determining the chargeable valuation of taxable property.[32] The first appearance of an eleven percent rate used to compute a school district's chargeable valuations for computing State Aid appears in the 1989 version of the statute.[33] The rate remained in the 1990 amendment which applied it to the 1991-1992 school year, and then also to personal commercial and personal agricultural property. The statute came to state as follows, in part.

The Legislature hereby declares, for the purpose of financial support to school districts through the State Aid Formula, that greater equalization of State Aid to school districts will be attained by the following procedure:

1. For the 1989-90 school year, the real property portion of the valuations for those school districts in counties having an assessment ratio in excess of twelve percent (12%) shall be computed at a twelve percent (12%) assessment ratio to determine chargeable valuations. Beginning with the 1990-91 school year, the real property portion of the valuations for those school districts in counties having an assessment ratio in excess of eleven percent (11%) shall be computed at an eleven percent (11%) assessment ratio to determine chargeable valuations. Beginning with the 1991-92 school year, the commercial personal and agricultural personal property portion of the valuations for those school districts in counties having an assessment ratio in excess of eleven percent (11%) shall be computed at an eleven percent (11%) assessment ratio to determine chargeable valuations. The Oklahoma Tax Commission shall supply to the State Department of Education the information necessary to carry out the provisions of this paragraph.

2. The real property portions of the valuations for those school districts in counties having an actual assessment ratio of less than twelve percent (12%) shall be computed at the actual assessment ratio in effect for the county as determined by the Oklahoma Tax Commission in order to determine chargeable valuations for calculating State Aid to such district if such ratio is at least nine percent (9%) and the county is certified by the Oklahoma Tax Commission to have a verifiable revaluation program using property identification cards for the applicable assessment year.

3. The real property portion of the valuations for those school districts in counties which have an actual assessment ratio of less than twelve percent (12%) and which are not certified by the Oklahoma Tax Commission to have a verifiable revaluation program using property identification cards shall be computed at a twelve percent (12%) assessment ratio to determine chargeable valuations. For each school year, the actual assessment ratio shall be the assessment ratio recommended by the Oklahoma Tax Commission and certified by the State Board of Equalization for the applicable assessment year.

70 O.S.1991 § 18-109.1 & 70 O.S.2011 § 18-109.1.

The 1990 statute was not amended and this version appeared unaltered in the 1991, 2001, and 2011 decennial versions of our statutes.[34] Beginning with the 1991-1992 school year, the commercial personal and agricultural personal property portion of the valuations for those school districts in counties having an assessment ratio in excess of eleven percent shall be computed at an eleven percent assessment ratio to determine chargeable valuations to calculate State Aid.

¶ 26 Plaintiffs' petition states counties in Oklahoma have implemented different assessment rates for commercial personal and agricultural personal property. Plaintiffs allege they are located in counties with a rate in excess of an eleven percent rate, and because an eleven percent rate was not used during 1992-2014 an excessive amount of chargeable revenue was attributed to them causing an improper decrease in State Aid funds. Plaintiffs allege school districts in counties such as Tulsa County received too much State Aid during these years.

V. Summary Judgment and 70 O.S. § 18-118

¶27 We agree with plaintiffs that their action may be read as seeking mandamus to compel an audit of State Aid funds, to compel the OSDE to demand a return of funds from school districts in several counties for the years 1992-2014, to compel the OSDE to seek recoupment of funds not disgorged in response to these demands, and then to compel the OSDE to apportion State Aid funds to plaintiffs for the years 1992-2014. The trial court granted summary judgment to the intervenors (Tulsa County schools).

¶28 Summary judgment is an adjudication on the merits of the controversy.[35] Generally, an adjudication on the merits of a cause of action involves one or more elements of the cause of action as well as elements of a defense interposed against a cause of action.[36] A judgment determining the existence of a cause of action requires an adjudication concluding all elements of the action are present, but an adjudication that no cause of action exists may be based upon either (1) the absence of a single element of the action or (2) the presence of all elements of a defense to the action.[37]

¶29 The District Court appears to have adjudicated an element of plaintiffs' alleged cause of action. The District Court's order states the case "presents one (1) relatively straight forward question as a matter of statutory interpretation, whether the procedural mandates of 70 O.S.2011, § 18-118, have been satisfied in this case." The scope of the § 18-118 duty may be explained by a plain reading of its language and its necessarily implied meaning. However, the § 18-118 duty in the context of the jurisdictional and publici juris issue of standing raised by plaintiffs' assertion of a legally enforceable right was not expressly adjudicated, and plaintiffs' standing must be adjudicated on remand as we explain herein. We first address 70 O.S. § 18-118, and explain why we disagree, in part, with the trial court's description of the State Board of Education's duty pursuant to 70 O.S. § 18-118.

¶30 The trial court granted summary judgment to intervenors due to the lack of an audit required by 70 O.S. 2011 § 18-118 (A). The statute states as follows.

A. The State Auditor and Inspector shall approve auditors who shall audit the funds of the public school districts and the use made of the monies thereof, and shall make such other audits as may be required by the State Auditor and Inspector.

B. School districts and officers and employees thereof who divert any monies received by a district from the purpose for which the monies were apportioned to the district shall be jointly and severally liable for any such diversion.

C. If audits disclose that state monies have been illegally apportioned to, or illegally disbursed or expended by, a school district or any of its officers or employees, the State Board of Education shall make demand that the monies be returned to the State Treasurer by such school district. If the monies are not returned, the State Board of Education shall withhold the unreturned amount from subsequent allocations of state funds otherwise due the district. The State Board of Education shall cause suit to be instituted to recover for the state any monies illegally disbursed or expended, if not otherwise recovered as provided herein.

70 O.S. 2011 § 18-118.

The opening paragraph states that the "State Auditor and Inspector shall approve auditors" who shall audit the funds of the public school districts. This language came into being in 2010 when the Legislature removed the authority of the State Board of Education to appoint auditors and gave the authority to the State Auditor and Inspector.[38] The previous version of 70 O.S. § 18-118 stated as follows.

A. The State Board of Education shall appoint auditors who shall audit the funds of the public school districts and the use made of the monies thereof, and shall make such other audits as may be required by the State Board of Education.

B. School districts and officers and employees thereof who divert any monies received by a district from the purpose for which the monies were apportioned to the district shall be jointly and severally liable for any such diversion.

C. If audits disclose that state monies have been illegally apportioned to, or illegally disbursed or expended by, a school district or any of its officers or employees, the State Board of Education shall make demand that said monies be returned to the State Treasurer by such school district. If said monies are not returned, the State Board shall withhold the unreturned amount from subsequent allocations of state funds otherwise due the district. The State Board of Education shall cause suit to be instituted to recover for the state any monies illegally disbursed or expended, if not otherwise recovered as provided herein.

70 O.S.2001 § 18-118.

¶31 The first paragraph of the 2001 version of 18-118 stated the "State Board of Education shall appoint auditors." This authority to appoint auditors appears in the same statute which also states the State Board of Education "shall make demand" that funds improperly overpaid to a school district based upon an "audit" of the school district be returned, and if the funds are not returned then they are withheld by the State Board of Education from subsequent allocations of state funds to the school district. 70 O.S. § 18-118(C) (both 2001 and 2011 versions). The plain language in § 18-118 paragraph "C", "if audits disclose" clearly refers to the "audits" described in § 18-118 paragraph "A" in both the 2001 and 2011 versions.[39]

¶32 Plaintiffs relied on Independent School Dist. No. I-20 of Muskogee County v. Oklahoma State Dept. of Education,[40] for the Department's duty to calculate the improper apportionments for 1992-2014 and seek the return of the improperly apportioned funds to the Department. In Independent School Dist. No. I-20 we stated the following.

The State Department of Education, through the State Board of Education, is responsible for administration of the public school system in the state. The Board is responsible for apportioning and disbursing annual appropriations to school districts which meet qualifications to receive state aid. If the Board ascertains that any of the factors on which apportionment or allocations are based have changed so as to disqualify the district or reduce its aid, the Board has an affirmative duty to adjust the apportionment or collect an overpayment. Forfeiture of state aid and recovery of overpayments are governed by 70 O.S.2001 §§ 18--116--118.

Independent School Dist. No. I-20, 2003 OK 18, ¶ 15, 65 P.3d at 619, notes omitted.

In 2003 when we explained this statutory duty of the State Department of Education, through the State Board of Education, the version 2001 version of § 18-118 did not provide for auditors approved by the State Auditor and Inspector, but "auditors appointed by the State Board of Education." We clearly stated recoupment of State Aid overpayments "are governed by" the then current statues, 70 O.S.2001 § 18-116 - § 18-118. Independent School Dist. No. I-20, 2003 OK 18, at ¶ 15.

¶33 The version of 70 O.S. 18-118 in effect in 2016 when plaintiffs sought mandamus to compel an audit unequivocally states the involvement of the State Auditor and Inspector in the § 18-118 process. Plaintiffs' reliance on Independent School Dist. No. I-20 for arguing the OSDE has responsibility for an audit to the exclusion of the State Auditor and Inspector, regardless how "audit" is defined, is simply misplaced. The Legislature clearly intended for the State Auditor and Inspector to be involved after the amendment of § 18-118 in 2010.[41] Plaintiffs did not name the State Auditor and Inspector as a party.

¶34 The State Department of Education argues it and the State Board have no statutory obligation to make a demand for improperly apportioned funds unless and until the State Auditor and Inspector performs an audit specifically examining the proper amount of State Aid for the particular school district. They argue this language limits the scope of the OSDE's and the State Board's duty to seek an audit.

¶35 In both the 2001 and 2011 versions, the State Board of Education "shall" make a demand upon a school district for the return of funds in excess of the amount the school district should have legally received. In 2003 we observed that the State Board "has an affirmative duty to adjust the apportionment or collect an overpayment" to a school district.[42] A long-standing rule of statutory construction is that "may" generally denotes permissive or discretional, while "shall" is ordinarily interpreted as a command or mandate; however directory construction rather than mandatory for the word "shall" may be made upon a finding of legislative intent for such construction.[43] In both the 2001 and 2011 verison of section 18-118 an express authority is given using mandatory language for instituting a legal action to recover improperly allocated State funds.[44] This language emphasizes that the State Board of Education has an affirmative duty to make a demand upon a school district for return of an excessive State Aid apportionment.

¶36 The same statute, 70 O.S. §18-118, which creates an affirmative duty on the State Board to make a demand for an overpayment of funds also states this demand is based upon the State Auditor and Inspector approving auditors who shall audit the funds of the public school district. The essence of plaintiffs' complaint is simply this: Defendants and the trial court make the audit by the State Inspector a discretionary condition precedent to the exercise of a mandatory duty by the Board and this makes the statutory language inconsistent. While we disagree with this reasoning, we do conclude a lack of an audit does not relieve the State Board from requesting an audit from the State Auditor and Inspector pursuant to § 18-118 when the Board has a reason to do so to fulfill its § 18-118 duty.[45] Of course, the existence of the Board's duty does not necessarily mean a school district has a right to enforce that duty.

¶37 The jurisprudence of obligations includes the idea an express obligation created by either contract or statute may also include an implied obligation. In the context of the authority and powers of a state officer or state entity, we recently quoted from an opinion from forty years ago and stated the following.

. . . generally, an officer or agency has, by implication and in addition to the powers expressly given by statute, such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers. However, an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority.

Farmacy LLC v. Kirkpatrick, 2017 OK 37, ¶ 20, 394 P.3d 1256, 1261, quoting Marley v. Cannon, 1980 OK 147, 618 P.2d 401, 405 (citations omitted).

A statute creating an express power in the nature of an express affirmative duty normally creates an implied power necessary to fulfill that express affirmative duty. An implied power so created becomes an implied duty, unless some other provision of law or factual circumstance makes the implied duty either discretionary or unnecessary to fulfill.[46]

¶38 The OSDE is clearly correct that a statute may provide an official's mandatory duty will not arise until another official exercises a discretionary duty. In a general sense, there is nothing internally inconsistent with legislatively conditioning or predicating a mandatory duty upon the happening or condition of another event--the container of the law is filled to the brim with such conditions and events.[47] Section 18-118 would not be internally inconsistent if the Board's mandatory duty to demand repayment and seek recoupment was conditioned upon a discretionary duty of the State Auditor and Inspector to perform an audit. However, we reject the OSDE's reading for at least two reasons, (1) possession of information showing an incorrect apportionment may be known by several entities, including the State Board who is the entity charged with a duty to act on an audit, and (2) legislative authorization exists for a school district to request and pay for an audit which could be used for a § 18-118 demand and recoupment.

¶39 An implied duty of the State Board to request an audit is consistent with 74 O.S.2011 § 213 (C)(1) which states as follows.

C. 1. The State Auditor and Inspector shall perform a special audit on elementary, independent, and technology center school districts upon receiving a written request to do so by any of the following: the Governor, Attorney General, President Pro Tempore of the Senate, Speaker of the House of Representatives, State Board of Education, or the elementary, independent, or technology center school district board of education.

This statute authorizes both the State Board of Education and a school district board of education to request a special audit.

¶40 The State Auditor and Inspector is statutorily authorized to perform different types of audits, e.g., financial audit, operational audit, performance audit, special or investigative audit, and "any other type of engagement conducted in accordance with Government Auditing Standards."[48] Plaintiffs argued an "audit" of a school district would not show the error in apportionment. We understand this statement to be referencing "the board of education of each school district in this state shall provide for and cause to be made an annual audit of such school district for each fiscal year."[49] Plaintiffs argue on appeal the "special audit" performed by the State Auditor and Inspector on the Western Heights School District affirmatively shows the apportionment error for fiscal years 2004-2014. The special audit states the apportionment error plaintiffs assert is not in an "audit" of a school district.

¶41 Title 74 O.S.2011 § 213 states who pays for a special audit: "The costs of any such audit shall be borne by the audited entity and may be defrayed, in whole or in part, by any federal funds available for that purpose."[50] Section 213 also limits the number of special audits when not specifically requested: "the State Auditor and Inspector shall, contingent upon the availability of funding, perform a special audit, without notice, on not more than four common school districts each year."[51] In some circumstances a 74 O.S. § 213 special audit is paid using the 70 O.S. § 18-118.1(C)(2) revolving fund.[52] The special audit performed by the State Auditor and Inspector requested by Western Heights School District, states it was issued in accordance with 74 O.S. § 227.8, a statute which requires an entity to pay for services requested from the State Auditor and Inspector.[53]

¶42 It is true that 70 O.S. § 18-118 does not expressly state a duty for the State Board to request an audit from the State Auditor and Inspector. However, statutes clearly authorize a school district, or the State Board of Education, or others, to request a special audit by the State Auditor and Inspector apart from § 18-118. State Aid apportionment amounts are provided to school districts each year and provide information which could be used as a basis for an audit request by different parties. For example, the State Board of Education notifies and certifies to the treasurer and district superintendent of the school district the allocation of State Aid to be included as probable income for the local board of education to use in its Estimate of Needs and Financial Statement to its county excise board.[54] This notification is nothing new and predates alleged improper allocations in this case.[55] Whether plaintiffs' are legally charged with a duty to make audit requests for their own school districts during the years 1992-2014, or 2004-2014, because of either actual or constructive notice of some fact is not before us in this proceeding.[56] The point here is simply this, the failure of § 18-118 to have express language making the State Board the entity requesting an audit provides for circumstances when other entities may request an audit and the State Board need not needlessly request duplicate audits.

¶43 Plaintiffs named the OSDE and the State Superintendent of Public Instruction as a defendants for the purpose of compelling compliance with 70 O.S. § 18-118. Defendants objected and argued on summary judgment that the State Board of Education must be made a named party to compel the Board to audit and recoup funds pursuant to §18-118, and the State Department of Education is the wrong party. However, the State Board of Education was expressly named as a defendant in the Western Heights School District legal proceeding and the proceedings were consolidated prior to the trial court's judgment.

¶44 The supervision of instruction in public school schools is vested in a Board of Education with the State Superintendent of Public Instruction as the chief executive officer[57] or president of the Board.[58] Generally, the State Board takes official actions of the Board by a majority vote.[59] No authority is cited by plaintiffs for the Superintendent of Public Instruction or the Department of Education controlling the official actions of the State Board of Education when the Board makes a demand for the return of improperly apportioned State Aid funds.

¶45 The State Board of Education is the entity expressly stated as responsible for the State Aid recoupment in 70 O.S. § 18-118. Citation to this statute is the extent of defendants' argument on the issue that the wrong party was sued. Plaintiffs' argument relied on Independent School Dist. No. I-20 of Muskogee County as its sole authority on the proper party to be sued. The parties' arguments on this point are not fully developed. For example, the parties do not address the legal consequences of the Superintendent as a named party in an official capacity, or the Board as a named as party in the proceeding brought by Western Heights School District, and the issue whether plaintiffs' proceeding shows a proper party as a defendant is not preserved for appellate review with a proper argument and authority.

¶46 Plaintiffs object to the trial court concluding the auditors approved by the State Auditor and Inspector who "verify" an improper apportionment must be licensed pursuant to the Oklahoma Accountancy Act, 59 O.S.2011 § 15.1 - § 15.38 (as amended). The statutory language states: "The State Auditor and Inspector shall approve auditors who shall audit the funds of the public school districts and the use made of the monies thereof, and shall make such other audits as may be required by the State Auditor and Inspector." 70 O.S.2011 § 18-118. Again, the 2011 version of § 18-118 refers to an "audit" and it must have been performed by "auditors" approved by the State Auditor and Inspector.

¶47 Plaintiffs rely on Green-Boots Construction Co. v. State Highway Commission,[60] but this opinion is contrary to the point they argue. In Green-Boots we noted the commission had failed to audit a claim against it "as the law provides,"[61] and we authorized mandamus to compel an audit. We explained the action of the commission "was in violation of the statutory duty of the highway commission to audit the claim,"[62] as set forth in legislation for claims, and the Legislature had guarded "the expenditure of highway funds [and] has provided that the highway commission may not allow any claim until same has been audited by the commission."[63] The right to compel the audit was granted and defined by the Legislature. Green-Boots Construction Co. does not create a right to compel an audit apart from statutory authority requiring an audit procedure for certain claims. The right to compel an audit was not based upon the mere fact a party sought funds, but the legislatively-required procedure for a claim and an audit as a necessary and required part of the claim procedure. The procedure in 70 O.S.2011 § 18-118 has no language authorizing a claim by a school district for State Aid funds pursuant to § 18-118, or language stating a school district may compel an audit pursuant to § 18-118. The language in § 18-118 refers to process involving the State Board of Education. Whether a plaintiff school district possesses standing and a legal interest to compel the State Board to recoup funds from other school districts during the fiscal year of an appropriation or for nonfiscal year claims not yet lapsed presents a premature issue for adjudication at this time.

¶48 Plaintiffs argued an employee of the Department of Education who performed calculations for authorized State Aid funds was a sufficient authority to compel § 18-118 duties by mandamus. The OSDE employee herein was not licensed pursuant to the Oklahoma Accountancy Act. Section 18-118 clearly requires the State Auditor and Inspector shall "approve" the auditor. Plaintiffs did not (1) submit an evidentiary record showing the specific employee of the Department was expressly approved to perform "audits" by the State Auditor and Inspector, or (2) cite any statute expressly stating an employee of the OSDE was approved by the State Auditor and Inspector to conduct audits of State Aid funds. Whether the State Auditor and Inspector possesses authority to give someone authority to conduct audits of public funds when that person is neither an employee of the State Auditor and Inspector nor licensed by the Oklahoma Accountancy Act presents a hypothetical question on the factual record before us and this assignment of error presents no ground for reversal based upon our reading of the plain language in the statute.[64] Again, we agree with the trial court the statutorily described audit must be performed by auditors approved by the State Auditor and Inspector.

¶49 The State Board of Education has a 70 O.S.2011 § 18-118 duty to recoup improperly allocated State Aid funds. The State Board uses an audit from the State Auditor and Inspector relating to the school district which has been apportioned the incorrect excess of funds. We explain herein the duty of the State Board to apportion the correct amount of funds as required by the Legislature arises from sources such as the State Aid formula statutes and this duty is not based upon the Board's § 18-118 duties to recoup improper State Aid payments. We explain herein the duty of the State Board to apportion funds as required by the Legislature has a corresponding legally cognizable right possessed by a school district to be apportioned the correct amount of State Aid funds.[65]

¶ 50 As we explain, the cognizable interest a school district possesses has been recognized as identical with the amount it should receive based on the statutory formula as applied to that particular school district. A statutory duty of the State Board of Education to recoup State Aid in 70 O.S.2011 § 18-118 cannot translate into a corresponding right possessed by school districts to obtain those particular recouped funds. State Aid funds retain their identity as State funds when an incorrect and excessive amount is transferred to a school district and the Department demands a return of State funds. This concept may be observed by various methods. The nature of plaintiffs' requests for relief is based upon the State character of the funds requiring the Department to recoup because plaintiffs' themselves have no legal right to particular excessive State Aid funds held by a particular school district. The concept is also observed in the context of a State appropriation for State Aid lapsing and unexpended funds being subject to further appropriation by the Legislature. Section 18-118 cannot overrule mandatory language in the Oklahoma Constitution or a legislative appropriations bill establishing when an appropriation lapses.

¶51 These issues raise the standing possessed by a school district for the type of controversy. Plaintiffs' filings raise the issue of standing possessed by a school district, and the record on appeal is not sufficient to determine if standing exists as to plaintiffs. The District Court must adjudicate the standing issue to determine whether plaintiffs possess standing in the context of the scope of their claims.

VI. Standing is Jurisdictional and Limited Scope of Review by the Court in this Appeal

¶52 The Oklahoma Supreme Court may reverse, vacate or modify judgments of the District Court for errors appearing on the record.[66] We require parties to preserve error with proper argument and authority, or the error is waived for the appeal.[67] One exception to this rule occurs when a jurisdictional issue appears on the face of the parties' filings because an appellate court must engage in a sua sponte determination of its jurisdiction as well as the jurisdiction of the trial court.[68] An Oklahoma District Court has a similar duty to inquire into whether it possesses jurisdiction over the subject matter of an action that has been brought before the court.[69] Although a complaint in federal court must affirmatively show on its face jurisdiction and standing,[70] specific and detailed allegations of each and every jurisdictional fact need not appear on the face of a petition invoking the unlimited general jurisdiction of an Oklahoma District Court.[71] However, when language in the parties' filings casts reasonable doubt on the extent of a court's exercise of jurisdiction, such as subject matter jurisdiction or a plaintiff's standing, then an exercise of sound and reasonable discretion by the trial court is invoked to determine the standing issue as to facts, law, or both facts and law, as necessary to decide the issue.[72] This Court will not make first instance determinations of disputed non-jurisdictional law issues or contested fact issues.[73]

¶53 A plaintiff's standing may be assessed at any point during the judicial process, and may be raised by this Court sua sponte.[74] Standing is a preliminary or threshold issue adjudicated prior to an examination of the merits of a cause of action.[75] U.S. Supreme Court decisions distinguish (1) constitutional standing which is decided as a threshhold issue, and (2) plaintiff's allegation of harm or an aggrieved status for the purpose of showing the existence of a cause of action under a statute.[76] In Oklahoma, it is possible for mandatory law to limit either the jurisdictional existence or jurisdictional scope of a cause of action, and thereby create a state-law jurisdictional boundary to the cause of action.[77] In summary, the existence or mandatory scope of a legally cognizable cause of action may present a jurisdictional issue.

¶54 When a court raises an issue sua sponte the parties must be given a reasonable opportunity to present facts and law on the issue prior to the court's decision adjudicating the sua sponte issue.[78] For example, when we sua sponte address a jurisdictional issue the usual appellate practice involves providing all parties an opportunity to file briefs on the issue.[79] We do not depart from these principles because we do not now adjudicate standing as to plaintiffs in the controversy before us. We have not requested briefs for several reasons which may be summarized.

¶55 First, our past opinions have clearly recognized a cognizable right possessed by a school district to obtain State Aid funds by mandamus in some circumstances. Secondly, our past opinions have clearly recognized a mandatory constitutional limit on this cognizable right. Thirdly, plaintiffs' asserted a legally cognizable interest based upon an unusual statute which states on its face it will not take effect until the happening of an event; but the event did not occur and such is stated by both an historical note to a different statute and a State of Oklahoma website. Fourthly, we have not previously addressed the issue when a statute conditions its effectiveness on an event which has not occurred. Fifthly, our explanation of standing is limited to a type of controversy, and plaintiffs must be given an opportunity to present facts or law in support of standing as recognized by current law, or argue for exceptions to current law herein we have not discussed, or champion a modification or alteration of existing law.

¶56 The controversy involves the alleged illegality of public funds being diverted to school districts not entitled to those funds, and the publici juris nature of the controversy weighs in favor of the Court addressing the right of a school district to judicially obtain a correct State Aid apportionment. We also note the U. S. Supreme Court has used a procedure to address and explain standing in a type of controversy then before the Court, and the Court remanded the controversy to adjudicate the plaintiffs' standing therein based upon the explanation of standing provided by the Court's opinion. A similar type of remand has occurred in our Court when we have remanded for an adjudication of a critical issue which is identified or explained by an appellate opinion.

¶57 When the scope of a trial court's adjudication does not include critical issues or findings necessary for the subject matter, the case must be remanded with directions that the court make the necessary examination and findings.[80] Further, the proceeding herein is an appeal from a petition seeking statutory mandamus governed by equitable considerations, and an equitable result requires antecedent equitable means giving a party an opportunity to litigate issues.[81]

¶58 A related issue is our explanation of standing and its scope being limited to the type of controversy before us, and not the plaintiffs' standing which should be adjudicated on remand. Gill v. Whitford,[82] a 2018 decision of the U. S. Supreme Court, explained why it was remanding the matter to give a party an opportunity to show standing. The Court explained the plaintiffs had failed to show standing as required in federal court and the Court's usual practice was to dismiss a plaintiff's claims when standing was not shown.[83] The Court then explained the matter before it was not the usual case because it included "an unsettled kind of claim this Court has not agreed upon, the contours and justiciability of which are unresolved."[84] The Court remanded the case to the District Court so the plaintiffs could have an opportunity to present facts which met the standards of standing the Court explained in its opinion.[85] Gill mentioned its unique issues which weighed in favor of remanding to the District Court.

¶59 Our case has unique issues relating to standing. One of these is plaintiffs' reliance on a statute to show their legal interest in the controversy when (1) the statute conditions its effectiveness on the existence of an event, (2) the statute is published for several years with an effective date, and (3) the required conditional event for effectiveness has not occurred. The Gill plaintiffs asserted a "state-wide" or group political interest insufficient for standing. Although they met an initial pleading burden for an individual aggrieved legal interest, they failed to follow with proof, and the matter was remanded to the District Court for them to have an opportunity to show standing as a federal-court requirement.[86] Similarly, the plaintiffs herein asserted an interest as members of a group classified by a statute as well as alleging individual aggrieved status from an individual loss of State Aid funds. The need to address the critical difference in this controversy exists as it did in Gill.

¶60 Plaintiffs' action involves alleged illegal public funding of school districts and alleged public duties of the Oklahoma State Department of Education, Oklahoma State Board of Education, Treasurer for the State of Oklahoma, Oklahoma Tax Commission, and the State of Oklahoma Auditor and Inspector. This matter may be classified as one type of publici juris controversy.[87] It presents for adjudication public law issues relating to the internal conduct of government or the proper functioning of the State[88] as such relates to proper accounting and expenditure of State funds.[89]

¶61 We have not previously analyzed standing and justiciability of a school district in a 70 O.S. § 18-118 equitable enforcement proceeding involving several fiscal years. In Gill a few of "the contours and justiciability" had been "unresolved" by prior precedents, and a similar situation herein combined with the publici juris nature of the controversy weigh in favor of the Court explaining the jurisdictional issue with a remand to the District Court to apply the jurisdictional standards we explain herein.[90] The parties did litigate a related standing issue on summary judgment when they addressed the distinct concepts of justiciability and the political question doctrine.[91] Plaintiffs asserted a right to seek mandamus and additional State Aid funds based upon Independent School Dist. No. I-20 of Muskogee County v. Oklahoma State Dept. of Education, and its discussion of a § 18-118 recoupment as fulfilling legislative intent.[92] Although the trial court did not adjudicate this issue as part of a standing analysis or otherwise in its judgment, the standing issue as a jurisdictional boundary to a type of a cause of action is fairly comprised within the issues raised by the parties in the trial court. Finally, mandatory constitutional and statutory law involving the structure and function of government may not be waived by parties in a judicial contest, and a party's failure to raise such an issue, or a party creating an express admission or stipulation, will not bind a court's adjudication of these public interests.[93]

VII. A School District's Reliance on 70 O.S. § 18-109.7.

¶62 Plaintiffs relied on 70 O.S. § 18-109.7 to show they possessed a cognizable legal right. We do not adjudicate plaintiffs' standing based upon this statute. We explain we will assume for the purpose of this appeal a type of standing present in the statutory language could also be present without this statute. However, because of the publici juris nature of this controversy, the unique circumstances of this statute in legal publications, and the possibility of other school districts attempting to rely on this statute, we must address its application presented by plaintiffs.

¶63 Plaintiffs asserted (1) a right to additional State Aid funds, and (2) possession of a legal interest sufficient to compel audits of all party and non-party school districts in the State because: (1) The Legislature appropriated a specified sum of State Aid money for each of the fiscal years at issue. (2) The OSDE placed this appropriated sum each year in a common fund. (3) A particular public school district's State Aid is calculated based upon a mathematical relationship to all other school districts in the State participating in a statutory common State Aid fund for the fiscal year at issue. In summary, plaintiffs argued if a school district received an improper increase of calculated State Aid funds during a fiscal year, then this event necessarily caused an improper decrease in apportioned State Aid funds to one or more other school districts receiving State Aid from a common fund for the fiscal year.

¶64 Plaintiffs cited 70 O.S. § 18-109.7 for a "common school fund" as established therein[94] in support of their argument relating to appropriated State Aid funds and possession of a legal interest sufficient to justify their mandamus requests. The State defendants also noted section 18-109.7 in their filings. The effectiveness of 70 O.S. § 18-109.7 for the purpose of establishing a school district's standing is an issue which arises from the face of the statute. Section 18-109.7 states on its face its effectiveness is based upon a successful referendum election amending Okla. Const. Art. 10 § 12a.

The provisions of this section shall not have the force and effect of law unless and until the voters of the State of Oklahoma approve amendments to Section 12a of Article X of the Oklahoma Constitution contained in Enrolled House Joint Resolution No. 1005 of the 1st Extraordinary Session of the 42nd Oklahoma Legislature.

70 O.S.2011 § 18-109.7(D).

A vote of the People was held in a special election for this proposed amendment and it was defeated on June 26, 1990.[95] The "effective date" listed in certain current legal publications for § 18-109.7 is January 1, 1991. This date is not an effective date based upon a successful referendum election,[96] but the effective date stated in the original enactment by the Legislature when the statute was created apart from its required subsequent legislative referendum.[97] Language in § 18-109.7 referenced three other statutes when it was created, 47 O.S. §1104; 68 O.S. § 1004, and 68 O.S. § 1806. All three statutes were simultaneously amended when § 18-109.7 was created, and all three referenced the then proposed constitutional amendments. Two of the statutes have since been amended and language removed which applied conditions based upon the proposed amendments.

¶65 Section 18-109.7(C) references 68 O.S. § 1806, and the 2011 version of §1806 (b)(2) still appears to condition application as to one of its parts on an amendment to Section 12a of Article X of the Constitution by referencing the same legislative referendum as in 70 O.S. § 18-109.7.[98] The Thomson Reuters (West) publications note the election defeat of the proposed amendment on June 26, 1990, with reference to 68 O.S. § 1806, but not with reference to 70 O.S. § 18-109.7.[99] Oklahoma Constitution, Art. 10 § 12a, was adopted by an election in August 1913, and remains unamended.[100] We have stated Okla. Const. Art. 10 § 12a is not self-executing but requires statutory enactments for its execution.[101]

¶66 Section 18-109.7 was created in the First Extraordinary Session of the Forty-Second Legislature by House Bill No. 1017 (approved April 25, 1990).[102] It was created in 1990 as "new law" and not as an amendment to a then current statute. Section 18-109.7 references 68 O.S. § 1004, a gross production tax statute, with a new version of 68 O.S. 1004 enacted by House Bill No. 1017 in its section 95. This version of § 1004 also contained a provision for an amendment to the Oklahoma Constitution contained in Enrolled House Joint Resolution No. 1005 of the 1st Extraordinary Session of the 42nd Oklahoma Legislature.[103] The language in 68 O.S.1991 § 1004 referencing the legislative referendum was removed in 1999.[104]

¶67 Section 18-109.7 also contains a reference to 47 O.S. § 1104, and with an amendment in H.B. 1017,[105] the then new § 1104 twice referenced Enrolled House Joint Resolution No. 1005 with a provision for money to be remitted to the State Treasurer for the Common Fund.[106] In 1995 the Legislature removed the first-appearing reference to the legislative referendum in 47 O.S.1991 § 1104(A)(1)(b).[107] The second-appearing reference to the referendum in section 1104(B) was removed by the Legislature two years later.[108] Additional changes in funding were created to support House Bill 1017 which we need not analyze for this appeal.[109]

¶68 Section 18-109.7 has continued to appear in legal publications of Oklahoma Statutes including decennial versions since 1991 although § 18-109.7 was never otherwise amended or approved by the Legislature,[110] and the statute continues to this day to state its effectiveness dependent upon approval by a vote of the People. No published appellate opinion with precedential or persuasive value in this State has relied on this statute to dispose of a legal controversy.

¶69 Nothing before us shows State officials used the language in § 18-1097.7 for a general revenue fund apportionment of State Aid to school districts. Its potential legal absence as a fund for accounting purposes would not strip an otherwise legally-supported and statutorily-required apportionment to school districts,[111] nor would an incorrect reference to a specific fund in the Treasury create a legal bar to a State Aid appropriation and apportionment. [112] This conclusion is based in part because everything authorized by law in a valid appropriation to be paid out of the State Treasury is payable out of the general revenue fund when not made payable out of a valid designated fund,[113] and appropriation legislation often has authorizations for the transfer of funds to the proper dispensing fund.[114]

¶70 Plaintiffs do not address their reliance on § 18-109.7 to show they have a legal interest in the legal correctness of State Aid apportionments to other school districts. They do not address authority for using a common financial account allocating State Aid funds pursuant to some other authority, such as customary accounting practice of the OSDE by virtue of a different statute,[115] or from the method the Legislature has used to appropriate State Aid funds such as the State Aid formula statute itself,[116] or if § 18-109.7 could be infused with legal vitality by some other means such as a good faith reliance on the part of public officials and confusion related to the public purse in the context of equity.[117] We need not decide those hypothetical issues.

¶71 For the sole purpose of our opinion and without adjudicating the issue for this proceeding or creating a legal effect on subsequent proceedings for any purpose including plaintiffs' standing, we may assume at this stage of this litigation plaintiffs' right to compel the State Board of Education to request an audit could be based, in part, on the existence of a single financial account which is apportioned among all school districts in the State. However, even if we assume standing based on this principle for the purpose of this controversy, there still remains whether such standing is consistent with a school district's legal interest in State funds because of how the Oklahoma Constitution creates and limits a party's legal right to State-appropriated funds.[118]

VIII. Standing and Violation of a Statute.

¶72 Standing focuses on a plaintiff's legally cognizable interest in the outcome of the litigation.[119] This focus is not merely the general issue of whether mandamus may be used to compel enforcement of a public entity's statutory duty, but also if a school district possesses a cognizable legal interest for the specific statutory duty to be enforced by mandamus. For example, a governmental entity's duty to make a payment is not equal to, or the same standard for, determining a plaintiff's right to judicially compel the performance of that duty to make a payment in all contexts.[120] Secondly, when statutes create obligations governing the conduct of persons or entities, then the statutes do not necessarily make those obligations such that any person has standing to commence a judicial enforcement proceeding.[121]

¶73 The mere allegation of an improper application of statutory law does not create a legally-enforceable injury for every person and entity in the State, and we have explained this in the context of a school district as a plaintiff. In Murray Cnty. v. Homesales, Inc.,[122] we noted the difference between: (1) an allegation of improper application of a statute due to it being allegedly unconstitutional and potentially causing an ultimate reduction of State Aid funds paid to a school district due to a legislative decision; and (2) an improper application of a statute causing an actual reduction of local revenue paid to the school district.[123] A school district's standing was not based merely on the allegation of improper application of a statute, but the nature of the legal interest the school district possessed in the controversy, an alleged actual loss of local funds. A school district must have standing to seek equitable relief, and it must allege an injury in fact to a cognizable legal interest[124] and the relief sought would remedy the injury.[125] The alleged injury to a school district must be an injury to a cognizable legal interest and this interest is one of the elements for proof necessary to obtain equitable relief and also a standing requirement.[126]

IX. Standing, State-Appropriated Funds, and Mandatory Language Defining a
School District's Cognizable Right to Compel Payment by Mandamus

¶74 The Oklahoma Legislature has distinguished funds which are apportioned and disbursed annually by the State Board of Education from appropriations made by the Legislature from "funds derived from other sources provided by law" and the methods of apportionment and disbursements "shall remain in force until the same are amended or repealed by the Legislature."[127] A legislative appropriation is made each fiscal year "in lump sum" for State Aid apportioned to the public schools.[128] The Legislature also provides additional funding for common education by means of dedicated revenue sources.

¶75 Similarly, the OSDE distinguishes "state-dedicated revenue" from legislative "appropriations" for the purpose of describing individual fiscal-year appropriations for schools. They place in the former category school revenue derived from State-generated dedicated funds such as the Oklahoma gross production tax, State-imposed motor vehicle collections, the Oklahoma Rural Electrification Association tax, and State School Land earnings. In the latter category they place State appropriated funds which are not identified by an express statutory or constitutional dedication for revenue and expense.[129] For example, whether one uses OSDE published reports for 2009 or ten years later, 2018/2019, the Department indicates the principal sources of nondedicated appropriated revenues include Foundation and Salary Incentive Aid, and both annual reports appear to show a large amount of State general revenue fund money is allocated to public schools by a fiscal-year legislative appropriation.[130]

¶76 One issue is raised by the parties' filings but left unanswered: Whether any State Aid funds are derived from an appropriation to a revolving fund in a Bill which does not also use the standard language for lapsing the funding appropriation in the Bill. This is a standing issue because mandatory language in the State Constitution defines and limits the scope of a party's cognizable right to compel payment based on a general revenue fund appropriation, and an appropriation to a revolving fund not subject to this constitutional limit may nevertheless be subject to mandatory language for lapsing in the appropriations Bill created by the Legislature.

¶77 We first address the constitutional issue which pertains to a school district's standing.[131] The Oklahoma Constitution prevents State officials from making a payment of funds on a State general revenue appropriation older than two and one-half years (thirty months) prior to payment.

No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.

Okla. Const. Art 5 § 55.

The expiration of the thirty-month period in Art. 5 § 55 creates a time-limit for payment and a lapse in an appropriation from the general revenue fund by constitutional authority. This two and one-half years time limit for payment does not usually apply to certain funds. For example we have explained the Art. 5 § 55 limit does not apply to a re-appropriation of funds prior to their lapsing from a previous appropriation.[132] We have explained several times that funds are not limited by Okla. Const. Art. 5 § 55 when the funds are derived from non-fiscal dedicated revenue which is tied to non-fiscal dedicated expenses, such as when a revolving fund is created by the Legislature without a period for lapsing appropriations to the fund. In City of Sand Springs v. Department of Public Welfare,[133] we relied on State ex rel. Hawkins v. Okla. Tax Commission,[134] and explained the constitutional requirement for payment of the appropriation within two and one-half years after passage of the appropriating legislation did not apply to special funds, i.e., identified revenue devoted to "special purposes."[135]

¶78 We also addressed this issue in Edwards v. Childers,[136] where we noted the Legislature created a fund with a dedicated revenue source and a dedicated "imperative command" authorizing expenses from the fund for the purpose of constructing and maintaining state highways. The Court compared the legislation to that which created a "continuing special tax, the whole of which is dedicated to a single purpose."[137] The Court noted no further appropriation legislation was necessary "because the fund being set apart for the specified use must be so held and paid out in the manner prescribed, as long as the act which provides for its creation remains in force."[138] The Court then explained the nature of this special fund did not require application of the two and one-half year limitation on payment.

It is sufficient to say that it is wholly unnecessary for a determination at this time as to whether or not the appropriation of the funds created by the acts under consideration elapse at the end of 2 1/2 years from the date of the passage of the act. The question is prematurely presented to the court.

Edwards v. Childers, 1924 OK 652, 228 P. at 477.

The Legislature does use revolving funds for the purpose of funding specific needs in common education,[139] but as we explain herein, a large share of State Aid funds has been funded by the State's general revenue fund.[140] The State Aid formula does anticipate a school district may have a carryover in the school district's general fund and imposes penalties in the reduction of State Aid,[141] but this is a fund of the school district and not the dispensing/disbursing account/fund used and controlled by either the State Treasurer, or the OSDE, or other State entity for receiving, apportioning, or transferring State Aid funds.

¶79 The constitutional thirty-month period also does not apply to an appropriation considered to come into being by the Constitution itself where the constitutional appropriation is self-executing.[142] The Oklahoma Constitution contains the following language.

The Legislature shall, by appropriate legislation, raise and appropriate funds for the annual support of the common schools of the State to the extent of forty-two ($42.00) dollars per capita based on total state-wide enrollment for the preceding school year. Such moneys shall be allocated to the various school districts in the manner and by a distributing agency to be designated by the Legislature; provided that nothing herein shall be construed as limiting any particular school district to the per capita amount specified herein, but the amount of state funds to which any school district may be entitled shall be determined by the distributing agency upon terms and conditions specified by the Legislature, and provided further that such funds shall be in addition to apportionments from the permanent school fund created by Article XI, Section 2, hereof.

Okla. Const. Art. 13 § 1a.

The Constitution requires an appropriation for common education and it specifies a constitutional amount of forty-two ($42.00) dollars per capita based on total state-wide enrollment for the preceding school year. This same provision states the amount of state funds to which any school district may be entitled shall be determined by the distributing agency upon terms and conditions specified by the Legislature. Even if we assumed and considered the forty-two dollars as a constitutionally-specified minimum: (1) The clear language of Art. 13 § 1a would leave amounts appropriated in excess of $42.00 within the Legislature's discretion.[143] (2) There is little doubt the Legislature appropriates more than $42.00 per capita based on total state-wide enrollment.[144] and (3) The usual rules of constitutional interpretation leave no doubt the fiscal-year appropriations in excess of $42.00 herein are legislative and not constitutional appropriations.[145] We must also note on this issue: Our Legislature generally may do, as to proper subjects of legislation, all but that which it is prohibited from doing, and under the Oklahoma Constitution fundamental rights are not necessarily determined by whether they are provided for within the document.[146] The language of Okla. Const. Art. 13 § 1a does not give school districts a constitutional-appropriation exemption from applying Okla. Const. Art. 5 § 55.

¶80 We recognized a school district has a legal interest in a State Aid appropriated and apportioned amount of funds in State ex rel. Board of Education of Independent School District No. 1 of Grady County, et al. v. State Board of Education.[147] In this case the standing of the school district was not based upon an interest in a common fund with incorrect apportionments having various effects upon all school districts in the State. In Grady County the school district brought mandamus proceedings against the State Board of Education and its Director of Finance to compel them to make a reapportionment and further disbursement of State Aid funds allegedly owed to the specific school district by a proper application of the State Aid formula. The defendants raised the thirty-month bar in Okla. Const. Art. 5 § 55 in response to the school district's claim. The Court's response to the argument invoking Art. 5 § 55 is instructive.

¶81 The Court noted the State Aid appropriation in that case was (1) "nonfiscal" and (2) "available for contractual purposes for thirty months from that date (the effective date of the enactment)."[148] The Court also noted the legal proceeding brought by the school district was commenced on a date within the Okla. Const. Art. 5 § 55 thirty-month period: "The present action was begun and alternative writs issued on November 16, 1953, within the thirty-month period following the date of the 1951 appropriation."[149] The Court noted the Legislature acted in 1953 and "continued and reappropriated" the 1951 appropriation minus sums previously expended. The Court noted the evidence in the case showed that on the date the school district commenced its action in District Court "there remained on hand some $2,359,400 of the 1951 appropriation for the fiscal year ending June 30, 1953." However, this account was reduced to a zero balance by defendants while plaintiff's action was pending in District Court.

¶82 The Court in Grady County noted a similar question had been examined in Fortinberry Co. v. Blundell,[150] where private parties sought mandamus to compel the State Treasurer to deliver a warrant on State funds to pay for what was due on a contract made between one of the plaintiffs, the Fortinberry Company, and the Oklahoma Tax Commission. The District Court rendered a judgment for the plaintiffs, finding the contract between the Tax Commission and the Fortinberry Company was a legal and valid contract, an assignment and pledge thereof to a bank was valid, and that such acts had been accepted and approved by the Tax Commission. This judgment was affirmed on appeal
in a different proceeding.[151]

¶83 The original action in Fortinberry was filed in 1938 after the merchandise had been delivered to the Tax Commission and the action was based upon a contract dated May 18, 1937. Plaintiffs asserted the legislative authorization for the contract occurred in 1937, and the authorization could not be repealed in 1939 without a provision providing for payment of a valid contractual claim. The Court agreed.[152] The Court then noted the specific 1937 legislation "was in the nature of a revolving fund, which would still be in effect unless the law were repealed or amended," and "[i]t was not an appropriation for any fiscal year or years."[153] The Court characterized the action for delivery of a warrant as "clearly ancillary" to the original action.[154] The Court noted a stipulation concerning the availability of funds to pay the plaintiffs' claim: "It is stipulated that each month from July 1, 1939, to January 1, 1940, there was a surplus in the General Enforcement Fund in excess of the amount of plaintiffs' claim, after paying all other expenses of administration."[155]

¶84 The Court also noted the reason for the delay in paying the claim. The delay was caused by State officials refusing to approve and pay a timely valid claim and the delay was not chargeable to plaintiffs. The Fortinberry Court relied on Carter v. Miley,[156] in support of this point.[157] We explained the ruling with the following language.

This ruling was upon the theory that when a State official wrongfully refuses to perform an act necessary to secure payment, such payment will be enforced by mandamus and will relate back to and be considered as made when it should have been made, and the fund provided for payment shall be considered as encumbered by the claim.

Fortinberry Co. v. Blundell, 242 P.2d at 434.

This language simply cannot be read as equating the act of an incorrect school district apportionment with an act of State officer which "wrongfully refuses to perform an act necessary to secure payment." Such a reading would prevent any general revenue fund appropriation from lapsing after thirty months when one government entity seeks judicial correction of payments the Legislature has specified are to be transferred from one government entity to another government entity. Such a reading would be inconsistent with other language in Fortinberry as well as our analysis in Grady County. We stated the following in Fortinberry.

In State ex rel. Telle v. Carter, 170 Okl. 50, 39 P.2d 134, 140, it was said: It was clearly the intention of the framers of the Constitution that any party claiming any portion of an appropriation, setting apart for some purpose or uses a definite sum of money, must make claim for same within two and one-half years after the appropriation is made, and if claim is not so made, thereafter the Legislature is authorized to make whatever disposition of the balance of such appropriation as it may determine is for the best interests of the state.

Fortinberry Co. v. Blundell, 242 P.2d at 434, quoting State ex rel. Telle v. Carter, 1934 OK 702, 39 P.2d 134, 140.

In State ex rel. Telle v. Carter, the State Auditor rejected a claim filed on April 3, 1934, for payment of a salary for services performed during the months July 1933 to and including March 1934, and then a mandamus proceeding was brought in 1934. The language in Fortinberry refers to a State official refusing a claim by another. Our analysis in Grady County referenced the date the mandamus proceeding was commenced as a timely claim for purposes of Okla. Const. Art. 5 § 55.

¶85 Fortinberry also states State ex rel. Telle v. Carter indicates when appropriated funds are not spent as required in an appropriation, then they are subject to being continued or revived, or subject to a new appropriation after the lapse in the original appropriation.[158] A lapsed appropriation occurs when funds are not spent as authorized during the time legislatively specified. For example, we have explained when "appropriations were not used for the purposes for which they were made and were not transferred legally, they constituted unexpended appropriations which lapsed at the end of the fiscal year . . . no valid contracts having been entered into, those appropriations lapsed."[159] A court does not enforce a lapsed legislative appropriation unless granted authority from the legislative body which created the appropriation.[160]

¶86 A school district must allege and present evidence stating the amount of funds which were incorrectly apportioned to obtain mandamus relief for a new apportionment.[161] Grady County, Fortinberry, and State ex rel. Telle were decided when the Legislature met in a regular session every two years, prior to the 1966 amendment to Okla. Const. Art. 5 § 27 which changed the sessions to an annual regular legislative session. We explained a purpose of Okla. Const. Art. 5 § 55 in this context.

One useful purpose was to enable the Legislature to ascertain at each biennial session the amount of Surplus revenues that would be available for appropriation during the next biennium. In order to do so it was necessary to establish a terminal date upon the effectiveness of prior appropriations. This was especially true as applied to general fund appropriations from which the three branches or departments of government are financed.

State ex rel. Hawkins v. Oklahoma Tax Commission, 1969 OK 118, 462 P.2d 536, 538.

Biennial sessions with an appropriation at the beginning of the session allowed the next session in the waning months of the thirty-month period to be able to assess the general funds to finance government.

¶ 87 Language in the Oklahoma Constitution may be mandatory and self-executing (or self-enforcing), and where mandatory State Constitutional provisions truly conflict with a state statute the constitutional provision is followed and the statute excluded from enforcement.[162] When mandatory law acts as a substantive limitation on a right to recover in a judicial proceeding, then the mandatory law is acting similar to a statute of repose which marks the boundary of a substantive right.[163] Section 55 of Article 5 of our Constitution is mandatory and self-executing.[164]

¶88 In Grady County we noted the applicability of Okla. Const. Art. 5 § 55, and we observed the availability of funds to pay the appropriation to the school district on the date the action was commenced in District Court. This observation is consistent with this Court explaining a court's power to prevent an irreparable injury to a party's legal rights from a wrongful refusal of a government official to act while judicial relief is being sought.[165]

¶ 89 In our 1980 opinion in City of Sand Springs v. Department of Public Welfare,[166] we explained the purpose for Okla. Const. Art. 5 § 55 was to make the Will of the Legislature paramount to wasteful spending or prodigality by the Executive.[167] City of Sand Springs relied on our 1924 opinion in Edwards v. Childers,[168] and explained the character of being wasteful was based upon the mere fact the legislative Will for an appropriation was overruled by the Will of the Executive when diverting money appropriated for one purpose and using it for a different purpose.[169] Our opinions have historically determined prodigality by analyzing the degree of discretion possessed by the entity spending the appropriation and if spending outside of the Legislature's Will could occur.

¶90 For example, City of Sand Springs relied on Edwards v. Childers where we looked at statutory language stating the Legislature gave the state entity an imperative command that all the moneys in a specific fund shall be expended for purposes and in the manner therein provided. We addressed whether an appropriation had occurred with a specified purpose. We examined the statutory requirement that the funds "shall be expended for purposes and in the manner therein provided," and we discussed our opinion from 1910 in Menefee v. Askew.[170]

¶91 We applied Menefee in Edwards and examined whether an appropriation expressed an intent by the Legislature to give officials a discretion to use appropriated funds in a manner which could be inconsistent with the Legislature's intent.[171] We condemned one appropriation with "looseness and carelessness of the language used" which "left to the discretion of the fish and game department" to spend appropriated moneys outside the intent of the Legislature.[172] The Fish and Game Act appropriation "contemplated advisable and necessary small expense of the department in catching and shipping game is not limited by the language of the act, and yet the act does not appropriate the entire fish and game fund for the stated uses of the department." We also discussed funds consumed by the fish and game department would cause "other departments of the state and other general public interests be thereby made to suffer by the prodigality of the fish and game department."[173] However, we gave our approval to a different appropriation to the state highway department where the appropriation controlled the department by specifying it was required to use the money in accordance with the Legislature's intent. The highway department appropriation was worded so "the will of the lawmakers absolutely controls the amount of the fund to be expended by the highway department," and "the acts of the executive department are definitely controlled by the provisions of the bill."[174]

¶92 The fundamental concept in a school district's cause of action which we applied in Grady County was simply this: Executive officers exercised an arbitrary discretion when they failed to follow the Legislative Will, by failing to correctly follow the State Aid statutory formula, which resulted in an apportionment of a factually incorrect amount of State Aid funds. This exercise of an arbitrary discretion in payment of government funds was judicially cognizable in a mandamus proceeding.[175] In 1910 (Menefee), and in 1924 (Edwards), and again in 1980 (City of Sand Springs), the Court explained Okla. Const. Art. 5 § 55 prevents an Executive officer from altering the Legislature's Will expressed in an appropriation by the officer changing the recipient of the appropriation or its amount. The Court determined the timeliness of the mandamus proceeding brought by the school district for the purpose of Okla. Cost. Art. 5 § 55. There can be no doubt that Okla. Const. Art. 5 § 55 and its thirty-month period for an appropriation lapse applies to annual fiscal year State Aid appropriated amounts derived from the State's general revenue fund.

¶93 A cognizable legal right to payment from a legislative appropriation is also defined by any other mandatory language used by the Legislature creating that right. Generally, we have explained when the Legislature creates a legal interest and also creates the remedy for its enforcement, then the remedy is exclusive when so stated by the Legislature.[176] We have examined whether a cognizable legal interest a party possesses and the remedy for its enforcement were created by common law or statute.[177] A statute may express a mandatory requirement in the absence of express language, and we examine both the nature of the legal right created by the statute and whether the mandatory language at issue attaches directly to the right created, such as a mandatory time limit for enforcement of the right.[178] For example, when a statute of repose acts as a limitation on the right and not the remedy, then it acts to create a time-related element to the cause of action.[179] A lapse by statutory authority will occur when an appropriation states it will lapse with a fiscal year, or by otherwise stating it will lapse by statutory language, and such lapsing will moot a mandamus request for payment of government funds derived from a lapsed appropriation.[180]

¶94 We use fiscal year 2014-2015 legislation as an example how this issue may appear in a school district's assertion of a right to State Aid apportioned funds. A large share of funding for common education comes from the general revenue fund, and we see this in two Bills funding common education for 2014-2015. Enrolled Senate Bill No. 2127 (54th Okla. Legis., 2nd Sess., eff. July 1, 2014), and the Enrolled House Bill No. 3513 created at the same time.[181] The first two provisions of the Senate Bill are as follows.

SECTION 1. There is hereby appropriated to the State Board of Education from any monies not otherwise appropriated from the General Revenue Fund of the State Treasury for the fiscal year ending June 30, 2015, the sum of One Billion Fifty-five Million Two Hundred Ninety-four Thousand Five Hundred Forty-seven Dollars ($1,055,294,547.00) or so much thereof as may be necessary for the financial support of public schools.

SECTION 2. There is hereby appropriated to the State Board of Education from any monies not otherwise appropriated from the Education Reform Revolving Fund created in Section 34.89 of Title 62 of the Oklahoma Statutes, the sum of Seven Hundred Thirty-eight Million Six Hundred Twenty-five Thousand Four Hundred Seventy-four Dollars ($738,625,474.00) or so much thereof as may be necessary for the financial support of public schools.

Enrolled S.B. No. 2127 § 1 (emphasis added).

Enrolled House Bill No. 3513 states in part as follows.

1. Funds appropriated and authorized by Sections 1 through 7 of Enrolled Senate Bill No. 2127 of the 2nd Session of the 54th Oklahoma Legislature:

Local and State-supported Financial Support of Public Schools........$1,877,570,777.00

Enrolled H.B. No. 3513 § 1.

These two Bills clearly show general fund revenue funding common education and facially appear to be subject to the thirty-month limit in Okla. Const. Art. 5 § 55. They also show several provisions relating to revolving funds.

¶95 House Bill No. 3513 also contains the following provision expressing Legislative Will for appropriations to lapse.

SECTION 18. Appropriations made by Sections 1 through 14 of Enrolled Senate Bill No. 2720 of the 2nd Session of the 54th Oklahoma Legislature, not including appropriations made for capital outlay purposes, may be budgeted for the fiscal year ending June 30, 2015 (hereafter FY-15) or may be budgeted for the fiscal year ending June 30, 2016 (hereafter FY-16). Funds budgeted for FY-15 may be encumbered only through June 30, 2015, and must be expended by November 15, 2015. Any funds remaining after November 15, 2015, and not budgeted for FY-16, shall lapse to the credit of the proper fund for the then current fiscal year. Funds budgeted for FY-16 may be encumbered only through June 30, 2016. Any funds remaining after November 15, 2016, shall lapse to the credit of the proper fund for the then current fiscal year. These appropriations may not be budgeted in both fiscal years simultaneously. Funds budgeted in FY15, and not required to pay obligations for that fiscal year, may be budgeted for FY-16, after the agency to which the funds have been appropriated has prepared and submitted a budget work program revision removing these funds from the FY-15 budget work program and after such revision has been approved by the Office of Management and Enterprise Services.

Enrolled House Bill No. 3513 at § 18.

This language states, except for capital outlay purposes, appropriations in Sections 1 through 14 of Enrolled Senate Bill No. 2720 of the 2nd Session of the 54th Oklahoma Legislature may be budgeted for fiscal years ending June 30, 2015, and June 30, 2016. Section 18 also states some funds will lapse when remaining after November 15, 2015, and not budgeted for FY-16. The funds lapse on June 30, 2016.

¶96 Section 18 of H.B. No. 3513 references Enrolled S.B. 2720. There was no Enrolled Senate Bill with number "2720" in the second session of the 54th Legislature. The highest Enrolled Senate Bill for the Session is No. 2140, and this is the same number for the highest Engrossed version, except for Engrossed S.B. No. 9999. These two are also the highest sequential Introduced Senate Bill numbers. No S.B. Floor Version is numbered 2720. Enrolled House Bill Numbers appearing in sequence include: 2692, 2706, 2711, 2730, 2740, and 2765. No Enrolled House Resolutions of any kind are numbered "2720." An Engrossed House Bill No. 2720 exists for the Second Session of the 54th Legislature, but its subject is tax law and contains no appropriation.

¶97 Appropriations are made in sections 1-14 of Enrolled S.B. No. 2127, and they pertain to fiscal year appropriations for education.[182] In ascertaining and giving effect to the Legislature's Will, inept or incorrect choice of words in a statute will not be construed and applied in a manner which would destroy the real and obvious purpose of the statute.[183] While a scrivener's error is not used to change the law, it may be used to determine meaning to avoid an absurd consequence.[184] Section 18 of H.B. No. 3513 referring to non-existent "2720" refers to S.B. 2127, and language in Section 18 states: "Any funds remaining after November 15, 2015, and not budgeted for FY-16, shall lapse to the credit of the proper fund for the then current fiscal year." We construe this "shall lapse" as mandatory language.[185] The combination of Senate Bill No. 2127 and House Bill No. 3513 provides examples of the Legislature creating a statutory lapse in appropriations, and similar to a constitutional lapse pursuant to Okla. Const. Art. 5 § 55.

¶ 98 We need not analyze all education appropriation Bills between 1992 and 2014, or lapsing of appropriations. We need not analyze to what extent the general revenue fund was used in each year between 1992 and 2014. These matters are for the parties to examine on remand. We are not determining plaintiffs' standing pursuant to any appropriation. We have recognized mandamus may be used to compel public officials' compliance with mandatory constitutional and statutory law.[186] A school district must possess a legally cognizable right to bring a mandamus proceeding when seeking the payment of funds from a government entity.[187] A school district must also comply with mandatory law when it seeks to judicially compel the State Board of Education to pay State Aid funds to the school district. The legally cognizable interest must be based upon appropriations and funds which have not lapsed pursuant to either Okla. Const. Art. 5 § 55 or some other mandatory law.

X. Conclusion

¶99 We agree with plaintiffs their petition could be construed as a request to compel proper authorities to request an audit from the State Auditor and Inspector. The State Board of Education uses an audit prepared by auditors approved by the State Auditor and Inspector when using the audit for purposes of 70 O.S.2011 § 18-118.

¶100 Plaintiffs' petition may be construed as seeking payment for State Aid funds not correctly paid to the plaintiffs. A school district has a legally cognizable interest in funds correctly apportioned to that school district independent of the procedure in 70 O.S. § 18-118 used by the State Board of Education. Plaintiffs' standing is raised as an issue by their claims for payment of State Aid funds from State appropriations. A State appropriation to a revolving fund is subject to lapsing when the Legislature has stated it will lapse, and a general revenue appropriation is subject to lapsing pursuant to Okla. Const. Art. 5 § 55, provided these appropriations are not otherwise saved from lapsing by mandatory law. A school district lacks a cognizable legal interest and standing in a claim to compel the State Board of Education to fund a lapsed appropriation.

¶101 We expressly do not decide whether plaintiffs possess standing in whole or in part in relation to their claims for State Aid payments from the State Board of Education. Plaintiffs' standing must be adjudicated on remand as a preliminary jurisdictional issue in this controversy.

¶102 Plaintiffs possess no cause of action to obtain legislatively appropriated funds when those funds have lapsed by application of either Okla. Const. Art. 5 § 55 or other mandatory language such as in an appropriations bill. On remand: (1) The plaintiffs must present facts and legal authority showing the State Aid funds they seek are based on appropriations of State Aid to their specific school districts which have not lapsed by application of either (a) the thirty-month period of Okla. Const. Art. 5 § 55, or (b) legislative language creating a lapse for the specific appropriation they seek to enforce. (2) General revenue fund appropriations for State Aid lapse thirty months (Okla. Const. Art. 5 § 55) from the date of the appropriation, and other appropriations lapse when the appropriation bill contains lapsing language for the appropriation, and additionally in some circumstances lapsing for a non-general revenue fund appropriation will occur by Okla. Const. Art. 5 § 55. (3) Plaintiffs must show their action was commenced in the District Court within thirty months of any general revenue fund appropriation authorizing the specific State Aid funds they seek. (4) In addition to showing the specific appropriation does not lapse by Okla. Const. Art. 5 § 55, plaintiffs must show the appropriations bill authorizing the appropriation for the funds they seek is a bill which does not contain lapsing language, or if it does contain such language that their District Court action was commenced before the date of lapsing in the appropriations bill. (5) After the plaintiffs show the nature of the lapsed or non-lapsed funds they seek, then the District Court shall make the proper findings of fact and dismiss any claims seeking funds based upon a lapsed appropriation. (6) If plaintiffs fail to show any non-lapsed appropriated funds, then their action shall be dismissed by the District Court because in such circumstance they have no legally cognizable aggrieved interest and they lack standing. (7) If plaintiffs are successful in showing they seek a specific legislative appropriation which has not lapsed after application of either the constitutional thirty-month period or legislative language, then the trial court may proceed to make findings of fact and conclusions of law addressing whether plaintiffs possess a right to compel by mandamus the State Board to fund a claim for specific State Aid funds. (8) If plaintiffs possess a legally cognizable claim to appropriated State Aid funds which have not lapsed, then that claim is subject to the ordinary jurisprudence of mandamus, including the manner, timing, and circumstances of compelling a State entity to pay State funds and whether such is appropriate by mandamus. (9) Mandamus to compel payment of a legally cognizable claim of a school district for payment of State Aid by the State Board must be based upon the State Board refusing to pay that claim made by that school district to the Board.

¶103 The judgment of the District Court is affirmed in part and reversed in part, and the controversy is remanded to the District Court for further proceedings consistent with this opinion.

¶104 CONCUR: WINCHESTER, EDMONDSON, COMBS, KANE, and ROWE, JJ.

¶105 CONCUR IN JUDGMENT: GURICH, C.J.

¶106 CONCUR IN PART AND DISSENT IN PART: KAUGER, J.

¶107 NOT PARTICIPATING: COLBERT, J.

¶108 NOT VOTING: DARBY, V.C.J.

FOOTNOTES

[1] The four school districts are: (1) Independent School District No. 52 of Oklahoma County (Midwest City-Del City); (2) Independent School District No. 57 of Garfield County (Enid); (3) Independent School District No. 71 of Kay County (Ponca City); and (4) Independent School District No. 89 of Oklahoma County (Oklahoma City).

[2] Western Heights Independent School District No. I-41 of Oklahoma County.

[3] District Court of Oklahoma County, Cause No. CJ-2016-4826, "Western Heights Independent School District No. I-41 of Oklahoma County v. The State of Oklahoma, ex rel. Oklahoma State Department of Education, Oklahoma State Board of Education, Joy Hoffmeister [sic], State Superintendent of Public Instruction for the State of Oklahoma, Oklahoma Tax Commission, Ken Miller, Oklahoma State Treasurer."

[4] The petition filed by Western Heights School District is not included in the record on appeal, and no lawyer has entered an appellate appearance for Western Heights School District.

[5] The schools are: (1) Tulsa Public School District, I-1 of Tulsa County; (2) Sand Springs Public School District, I-2 of Tulsa County; (3) Broken Arrow Public School District, I-3 of Tulsa County; (4) Bixby Public School System, I-4 of Tulsa County; (5) Jenks Public School District, I-5 of Tulsa County; (6) Union Public School District, I-9 of Tulsa County; and (7) Owasso Public School District, I-11 of Tulsa County.

[6] Plaintiff school districts are located in Enid and Ponca City, and the three Oklahoma County school districts, Oklahoma City, Mid-Del, and Western Heights.

[7] Appellants' Record on Accelerated Appeal, Vol. II, Tab 16, Intervening Defendant, OPCSA, Response and Objection to Plaintiffs' Motion for Summary Judgment, etc., at pg. 8.

[8] Appellants' Record on Accelerated Appeal, Vol. III, Tab 22, Plaintiffs' Motion for Reconsideration of the Judgment, at unnumbered pg. 1.

[9] Matter of K.S., 2017 OK 16, ¶ 7, 393 P.3d 715, 717.

[10] 12 O.S.2011 § 651: "A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party: ... 6. That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law...."

See also Slagell v. Slagell, 2000 OK 5, ¶¶ 5-9, 995 P.2d 1141, 1142 (a new trial motion is insufficient unless its allegations inform the trial court of the specific defects for which the aggrieved party seeks review) explaining Horizons, Inc. v. Keo Leasing Co., 1984 OK 24, 681 P.2d 757 and 12 O.S. § 991.

[11] Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 19, 396 P.3d 210, 218 (pursuant to 12 O.S. § 991 if a party files a motion for new trial, then the assignments of error in a subsequent appeal are limited to those raised in the motion before the trial court); City of Broken Arrow v. Bass Pro Outdoor World, L.L.C., 2011 OK 1, ¶ 11, 250 P.3d 305, 311 (assignments of error in a subsequent appeal are limited to those raised in the motion before the trial court, and rule applied to a motion to reconsider construed as a motion for new trial); Slagell v. Slagell, 2000 OK 5, 995 P.2d 1141 (rule applied to dismiss appeal); Federal Corporation v. Indep. Sch. Dist. No. 13 of Pushmataha Co., 1978 OK CIV APP 55, 606 P.2d 1141, 1144 (approved for publication by the Supreme Court), (rule explained as "a continuation of a well-established principle of appellate practice).

[12] 12 O.S.2011 § 1451: "The writ of mandamus may be issued by the Supreme Court or the district court, or any justice or judge thereof, during term, or at chambers, to any inferior tribunal, corporation, board or person, to compel the performance of any act which the law specially enjoins as a duty, resulting from an office, trust or station; but though it may require an inferior tribunal to exercise its judgment or proceed to the discharge of any of its functions, it cannot control judicial discretion."

[13] Gaines v. Maynard, 1991 OK 27, 808 P.2d 672, 676 (statutory mandamus procedure is a "special statutory proceeding" not governed by the Oklahoma Pleading Code) citing, Committee Comment to 12 O.S.1985 Supp. § 2001.

[14] Osage Nation v. Bd. of Commissioners of Osage Cnty., 2017 OK 34, ¶ 46, 394 P.3d 1224, 1240 (An action seeking a mandatory injunction against a public official to compel the enforcement of law is usually considered to be in the nature of mandamus.); Stonecipher v. Dist. Ct. of Pittsburg County, 1998 OK 122, ¶ 9, 970 P.2d 182, 185 (mandamus is a special proceeding addressing itself to the equity powers and conscience of a court or judge).

[15] Christian v. Gray, 2003 OK 10, ¶ ¶ 40-47, 65 P.3d 591, 608-610 (review of issues of law and fact); I.T.K. v. Mounds Public Schools, 2019 OK 59, n. 12, & ¶¶ 11-12, 451 P.3d 425, 431 (appellate standard of review is based upon the nature of the trial court's decision and the judicial discretion exercised); Laubenstein v. Bode Tower, L.L.C., 2016 OK 118, ¶ 9, 392 P.3d 706, 709 (In a case of equitable cognizance, a judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity.).

[16] Grisham v. City of Oklahoma City, 2017 OK 69, ¶ 4, 404 P.3d 843, 846.

[17] 12 O.S. Ch. 2, App., Rule 13 (a) provides in part: "A party may move for either summary judgment or summary disposition of any issue on the merits on the ground that the evidentiary material filed with the motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact."

Cf. Shamblin v. Beasley, 1998 OK 88, n. 25, 967 P.2d 1200, 1208 ("Other jurisdictions, much like Oklahoma, do not differentiate--for summary judgment purposes--between equity suits and actions at law."); Board of County Com'rs of Marshall County v. Snellgrove, 1967 OK 108, 428 P.2d 272 (mandamus is a special proceeding addressing itself to the equity powers and conscience of the court or judge, and a judgment of the trial court will be set aside if it is clearly against the weight of the evidence); Chandler U.S.A., Inc. v. Tyree, 2004 OK 16, ¶ 31, 87 P.3d 598 (discussing the Oklahoma Discovery Code and stating issues in a mandamus proceeding are tried as in a civil action).

[18] Braitsch v. City of Tulsa, 2018 OK 100, ¶ 2, 436 P.3d 14,17. See also Christian v. Christian, 2018 OK 91, ¶ 5, 434 P.3d 941, 942 ("when this Court is faced with a question of statutory interpretation, we apply a de novo standard of review").

[19] Boyle v. ASAP Energy, Inc., 2017 OK 82, ¶ 7, 408 P.3d 183, 187-188; Nelson v. Enid Medical Associates, 2016 OK 69, 376 P.3d 212, 216.

[20] For identification purposes plaintiffs' request for judicial notice includes a photocopy of the government document, or relevant portion thereof if voluminous, and the website address for the document's location. See Western Heights Public School District Special Audit Report FY 2019, December 12, 2019, website for the State Auditor and Inspector, https://www.sai.ok.gov/ and then located by website-enabled search feature, https://www.sai.ok.gov/Search%20Reports/database/WesternHeightsWebFinal.pdf.

[21] Kaspersky Lab, Inc., v. United States Department of Homeland Security, 909 F.3d 446, 464 (D.C.Cir. 2018) citing Hurd v. District of Columbia, 864 F.3d 671, 686 (D.C. Cir. 2017) and Federal Rules of Evidence, Rule 201(b).

[22] 12 O.S. 2011 § 2202:
A. This section governs only judicial notice of adjudicative facts.
B. A judicially noticed adjudicative fact shall not be subject to reasonable dispute in that it is either:
1. Generally known within the territorial jurisdiction of the trial court; or
2. Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
C. A court may take judicial notice, whether requested or not.
D. A court shall take judicial notice if requested by a party and supplied with the necessary information.
E. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

[23] O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1224 (10th Cir. 2007) ("Federal Rule of Evidence 201(b) states: 'A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' ").

[24] O'Toole v. Northrop Grumman Corp., 499 F.3d at 1224-1225.

[25] U.S. v. Iverson, 818 F.3d 1015, 1022-1023 (10th Cir. 2016) (government records, statements, and reports are continually being placed on the internet to allow easy access to the general public). See also Bentley v. United of Omaha Life Insurance Company, 371 F.Supp.3d 723, 727 (C.D.Cal.2019); Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings).

[26] Fornalik v. Perryman, 223 F.3d 523, 529 (7th Cir. 2000) (discussing a court taking judicial notice of (1) official Immigration and Naturalization Service actions and Board of Immigration Appeals, (2) agency factfinding, and (3) agency and judicial decisions).

[27] Appellants' response to appellees' motion to strike notice of auditor's report, pg. 4, emphasis in original.

[28] Okla. Const. Art. 13 § 1a: provides in part: "The Legislature shall, by appropriate legislation, raise and appropriate funds for the annual support of the common schools of the State to the extent of forty-two ($42.00) dollars per capita based on total state-wide enrollment for the preceding school year. . . amount of state funds to which any school district may be entitled shall be determined by the distributing agency upon terms and conditions specified by the Legislature, and provided further that such funds shall be in addition to apportionments from the permanent school fund created by Article XI, Section 2, hereof." (Citing Okla. Const. Art.11 § 2 permanent school fund).

[29] See the discussion of legislative appropriations herein at ¶¶ 85-90.

[30] 70 O.S. 2011 § 18-109.1 (State Aid formula); 70 O.S.2011 § 18-200.1 (same).

[31] See, e.g., 70 O.S.2011 § 18-200.1 (C) ("On and after July 1, 1997, the amount of State Aid each district shall receive shall be the sum of the Foundation Aid, the Salary Incentive Aid and the Transportation Supplement, as adjusted pursuant to the provisions of subsection G of this section and Section 18-112.2"); 70 O.S. §18-200.1 (D)(1) ("Foundation Aid shall be determined by subtracting the amount of the Foundation Program Income from the cost of the Foundation Program"); 70 O.S. § 18-200.1 (D)(1)(b)(1) ("The Foundation Program Income shall be the sum of the following: (1) The adjusted assessed valuation of the current school year of the school district, minus the previous year protested ad valorem tax revenues held as prescribed in Section 2884 of Title 68 of the Oklahoma Statutes, multiplied by the mills levied pursuant to subsection (c) of Section 9 of Article X of the Oklahoma Constitution, if applicable, as adjusted in subsection (c) of Section 8A of Article X of the Oklahoma Constitution"). See also the Opinion of Okla. Atty. Gen. Edmondson, 1999 OK AG 36(July 20, 1999), ("The State Aid Program consists of two parts, foundation program aid and statutory incentive aid," where the former is a certain amount of money per pupil.).

We need not address 2020 amendments to 70 O.S.2011 § 18-200.1 to adjudicate the appeal. See 2020 Okla. Sess. Law Serv., c. 61, §§ 2 & 3 (S.B. 212) (West), (approved May 19, 2020) (amending 70 O.S.2011 § 18-200.1 and as amended by § 2 of c. 61); 2020 Okla. Sess. Law Serv., c. 128, § 1 (H.B. 3964) (West), (approved May 21, 2020) (amending 70 O.S.2011 § 18-200.1).

[32] Fair School Finance Council of Oklahoma, Inc. v. State, 1987 OK 114, 746 P.2d 1135, 1142-1143, citing State of Okla. ex rel. Poulos v. State Bd. of Equalization, 1982 OK 68, 646 P.2d 1269 (Poulos III).

[33] 70 O.S.Supp.1989 § 18-109.1(1) stated in part: "Beginning with the 1990-91 school year, the real property portion of the valuations for those school districts in counties having an assessment ratio in excess of eleven percent (11%) shall be computed at an eleven percent (11%) assessment ratio to determine chargeable valuations."

[34] 70 O.S.1991 § 18-109.1; 70 O.S.2001 § 18-109.1, 70 O.S.2011 § 18-109.1.

[35] Oklahoma Public Employees Association v. Oklahoma Department of Central Services, 2002 OK 71, ¶ 6, 55 P.3d 1072, 1076, citing Union Oil Co. of California v. Board of Equalization of Beckham County, 1996 OK 40, 913 P.2d 1330, 1333.

[36] Shamblin v. Beasley, 1998 OK 88, ¶ 8, 967 P.2d 1200. See also FDIC v. Tidwell, 1991 OK 119, 820 P.2d 1338, 1341 (adjudication of a cause of action includes adjudication of a legally cognizable defense to the cause of action).

[37] McGee v. Alexander, 2001 OK 78, ¶ 23, 37 P.3d 800, 806 (the absence of any one element used to define a cause of action is enough to defeat this action); Akin v. Missouri Pacific Railroad Co., 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044 (a defendant must show either the absence of at least one essential element to plaintiff's cause of action, or the presence of all elements necessary to an affirmative defense to the cause of action).

[38] 2010 Okla. Sess. Law, ch. 477, § 1 (West).

[39] Video Gaming Technologies, Inc. v. Tulsa Cnty. Bd. of Tax Roll Corrections, 2019 OK 84, ¶ 11, 455 P.3d 918, 921 (in the absence of ambiguity or conflict with another enactment, we simply apply the statute according to the plain meaning). See also Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶ 6, 139 P.3d 873, 883 (part of an entire statute must be construed in light of the whole statute and its general purpose and objective).

[40] 2003 OK 18, 65 P.3d 612.

[41] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 9, 326 P.3d 496, 501 (The primary goal in reviewing a statute is to ascertain legislative intent, if possible, from a reading of the statutory language in its plain and ordinary meaning.).

[42] Independent School Dist. No. I-20 of Muskogee County v. Oklahoma State Dept. of Education, 2003 OK 18, ¶ 15, 65 P.3d 612, 619.

[43] Grisham v. City of Oklahoma City, 2017 OK 69, n. 8, 404 P.3d 843, 847 citing Woods Development Co. v. Meurer Abstract, 1985 OK 106, 712 P.2d 30, 33.

[44] Velasco v. Ruiz, 2019 OK 46, ¶ 9, 457 P.3d 1014, 1017-1018 (our cases explain the Legislature's use of the word "shall" is considered to be creating a mandatory element).

[45] See also 70 O.S.2011 § 18-117:

All apportionments of State Aid to school districts shall be made by the State Board of Education through its Director of Finance, who shall not knowingly make any apportionment or disbursement of State Aid funds which is not authorized by law. Any State Aid funds illegally disbursed by the Director of Finance shall be returned to the State Treasurer by the school district receiving such funds, or legal action shall be instituted in the name of the state against such school district or on the bond of the Director of Finance.

[46] Farmacy, 2017 OK 37, ¶ 20, 394 P.3d at 1261. See also Okla. Dept. of Securities ex rel. Faught v. Blair, 2010 OK 16, ¶ 9, 231 P.3d 645, 652(public agency possesses those powers expressly granted by law and such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from law granting the powers) citing, Oklahoma Public Employees Ass'n v. Oklahoma Dept. of Central Services, 2002 OK 71, ¶¶ 25--27, 55 P.3d 1072, 1083--1084.

[47] See, e.g., American Bank of Commerce v. City of McAlester, 1976 OK 126, 555 P.2d 581, 585 (statute established a duty upon an account debtor to make payments to the assignee after account debtor received proper notification of the assignment, and statutory duty was conditioned upon the happening of an event); Comer v. Preferred Risk Mut. Ins. Co., 1999 OK 86, 991 P.2d 1006 (the Legislature created statutory duty for drivers and all occupants of vehicles to use seat belts, and the duty arises upon the happening, or fulfillment, of a condition, a person is an occupant).

[48] 74 O.S.Supp.2014 §212 (B)(4) (a-e).

[49] 70 O.S.2011 § 22-103(A). See also Oklahoma Administrative Code, 210:25-5-5 (as amended at 33 OK Reg 720, eff 8-25-16) (describing a school district audit).

[50] 74 O.S.2011 § 213 (C)(1) & (C)(3):

C. 1. The State Auditor and Inspector shall perform a special audit on elementary, independent, and technology center school districts upon receiving a written request to do so by any of the following: the Governor, Attorney General, President Pro Tempore of the Senate, Speaker of the House of Representatives, State Board of Education, or the elementary, independent, or technology center school district board of education. . . .

3. The special audit shall include, but not necessarily be limited to, a compliance audit. Such audits shall be designed to review items for management's compliance with statutes, rules, policies and internal control procedures or other items applicable to each entity. The costs of any such audit shall be borne by the audited entity and may be defrayed, in whole or in part, by any federal funds available for that purpose.

[51] 74 O.S.2011 § 213 (D).

[52] 70 O.S.Supp.2012 § 18-118.1:

A. When a bond is forfeited due to illegal activity of a school district officer or employee and an audit performed by the Office of the State Auditor and Inspector reported the illegal activity, the school district shall forward ten percent (10%) of the amount of the forfeited bond to the State Board of Education for deposit to the School Investigative Audit Revolving Fund.

B. 1. Every person convicted of the crime of theft, embezzlement, conversion, or misappropriation of school district funds shall be assessed an amount equivalent to ten percent (10%) of any court-ordered restitution costs.

2. The assessment shall be mandatory and in addition to and not in lieu of any fines, restitution costs, other assessments, or forfeitures authorized or required by law for the offense. The assessment required by this subsection shall not be subject to any order of suspension. The court shall order either a lump-sum payment or establish a payment schedule.

3. Willful failure of the offender to comply with the payment schedule shall be considered contempt of court.

4. For purposes of collection, the assessment order shall not expire until paid in full, nor shall the assessment order be limited by the term of imprisonment prescribed by law for the offense, nor by any term of imprisonment imposed against the offender, whether suspended or actually served.

5. The assessment provided for in this subsection shall be collected by the court clerk as provided for collection of fines and costs. When assessment payments are collected by the court clerk pursuant to court order, the funds shall be forwarded to the State Board of Education for deposit into the School Investigative Audit Revolving Fund created by this section.

C. 1. There is hereby created in the State Treasury a revolving fund for the State Board of Education to be designated the "School Investigative Audit Revolving Fund". The fund shall be a continuing fund, not subject to fiscal year limitations, and shall consist of all monies paid to and received by the State Board of Education from school districts, officers, or employees for the performance of audits, for the forfeiture of bonds, or for assessments ordered in addition to court-ordered restitution costs, and monies appropriated or transferred to the fund by the Legislature.

2. All monies accruing to the credit of the fund are hereby appropriated and may be budgeted and expended by the State Board of Education to reimburse the Office of the State Auditor and Inspector for costs incurred in the performance of special audits conducted pursuant to the provisions of Section 213 of Title 74 of the Oklahoma Statutes.

3. Prior to approval of any payment from this fund, the State Board of Education shall determine that a school district that is liable for expenses incurred due to the performance of an audit is unable to pay such expenses. Payments from this fund shall only be made to the extent that monies are available in the fund. Expenditures from the fund shall be made upon warrants issued by the State Treasurer against claims filed as prescribed by law with the Director of the Office of Management and Enterprise Services for approval and payment.

[53] 74 O.S.2011 § 227.8:

Notwithstanding the provisions of any other law, any state agency, board, commission, city or town, common school, technology center school, county, institution of higher education, public trust or political subdivision of the state may enter into agreements with the State Auditor and Inspector to perform audits, investigative or consultant services and the entity shall pay the State Auditor and Inspector for the services. Payments made by such entity shall be deposited in the State Treasury to the credit of the State Auditor and Inspector Revolving Fund created by Section 227.9 of this title. Expenses incurred in auditing such books and accounts, including compensation of necessary personnel, including consultants, or causing the books and accounts to be audited, shall be paid by the entity in the same manner as now provided by law for other disbursements.

[54] 70 O.S.2011 § 18-104; 70 O.S.2011 § 5-135.

[55] 70 O.S.2011 § 18-104 (70 O.S.1991 § 18-104); 70 O.S.2011 § 5-135(L) (70 O.S.1991 § 5-135(L).

[56] For example, when officials of an entity possess actual notice of circumstances sufficient to put the officials upon inquiry as to a particular fact within their sphere of official authority, and they omit to make such inquiry with reasonable diligence, they are deemed to have constructive notice of the fact itself. Manokoune v. State Farm Mut. Auto. Ins. Co., 2006 OK 74, ¶ 18, 145 P.3d 1081, 1085-1086 (notice of a fact may be sufficient to put a person upon inquiry as to a particular fact, and when failing to make such inquiry is deemed to have constructive notice of the fact; and constructive notice in some circumstances is imputed as an issue of law based upon a dependent issue of fact); Tiger v. Verdigris Valley Elec. Coop., 2016 OK 74, ¶ 16, 410 P.3d 1007, 1012 (knowledge or notice possessed by an agent while acting within the scope of authority is knowledge or notice attributed to the principal).

[57] 70 O.S.2011 § 1-105(C); 70 O.S.2011 § 3-107.1. Cf. 70 O.S.2011 § 23-104 (3) (for purposes of Article 23 of Title 70 State Superintendent of Public Instruction is the executive officer of the State Board of Education).

[58] Okla. Const. Art. 13 § 5: (the supervision of instruction in the public schools shall be vested in a Board of Education, and the Superintendent of Public Instruction shall be President of the Board); 70 O.S.2011 § 1-105(B) ("The State Board of Education is that agency in the State Department of Education which shall be the governing board of the public school system of the state.").

[59] 70 O.S.2011 § 3-103 ("A quorum of the State Board of Education shall consist of four members. No business may be transacted at any meeting unless a quorum is present and every act of said Board shall be approved by a majority of the membership of said Board.").

[60] 1933 OK 521, 25 P.2d 783.

[61] 1933 OK 521, 25 P.2d at 787.

[62] 1933 OK 521, 25 P.2d at 787 (emphasis added).

[63] 1933 OK 521, 25 P.2d at 785 (emphasis added).

[64] Gaasch, Estate of Gaasch v. St. Paul Fire and Marine Insurance Company, 2018 OK 12, n. 23, 412 P.3d 1151 (Court does not address hypothetical issues in an appeal).

[65] A legal duty giving rise to liability corresponds to a correlative legal right secured by a legal remedy. Hensley v. State Farm Fire and Casualty Company, 2017 OK 57, n. 17, 398 P.3d 11, citing Silver v. Slusher, 1988 OK 53, n. 28, 770 P.2d 878, 884; W. Hohfeld, Fundamental Legal Conceptions, 78 (1923) (explaining a right may have a correlative negative or positive legal duty based upon the right at issue), and Leake, Law of Property in Land, 1-2 (1st ed., 1874).

[66] 12 O.S.2011 § 952 (a):

(a) The Supreme Court may reverse, vacate or modify judgments of the district court for errors appearing on the record, and in the reversal of such judgment may reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof.

[67] Osage Nation v. Bd. of County Commissioners of Osage Cnty., 2017 OK 34, n. 20, 394 P.3d 1224, citing Worsham v. Nix, 2006 OK 67, ¶ 28, 145 P.3d 1055, 1064 (failure to brief an issue with authority is a waiver of an assignment of error relating to that issue). See also Matter of Estate of Vose, 2017 OK 3, n.1, 390 P.3d 238, 242 (argument without supporting authority will not be considered).

[68] Stites v. DUIT Const. Co., Inc., 1995 OK 69, n. 10, 903 P.2d 293, 297 ("It is this court's duty to inquire sua sponte not only into its own jurisdiction but also into the cognizance of the court whence the case came by appeal or on certiorari.") (collecting cases).

[69] Fehr v. Black Petroleum Corporation, 1924 OK 903, 229 P. 1048, 1050 (when discussing a claim defendant used the incorrect procedure to challenge the jurisdiction of the trial court, the Supreme Court explained "the question can be raised at any stage of the proceedings, either by motion, or the court may, of its own motion, or whenever its attention is called to the fact, refuse to proceed further and dismiss the case"), citing Model Clothing Co. v. First National Bank of Cushing, 1916 OK 852, 160 P. 450. Cf. Dutton v. City of Midwest City, 2015 OK 51, ¶ 15, 353 P.3d 532, 538 ("A court has a duty to inquire into whether it possesses jurisdiction over the subject matter of an action that has been brought before the court."); Sheffer v. Buffalo Run Casino, PTE, Inc., 2013 OK 77, 315 P.3d 359 (District Court's sua sponte dismissal of action against Peoria Tribe for lack of jurisdiction affirmed on appeal by Court).

[70] FW/PBS v. City of Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995). See also Metallgesellschaft AG v. Sumitomo Corp. of Am., 325 F.3d 836, 842 (7th Cir.2003) (a district court may dismiss a case sua sponte for lack of Article III standing); Cf. Kilgore v. Attorney General of Colorado, 519 F.3d 1084, 1089 (10th Cir. 2008) (federal district court may dismiss a habeas corpus petition sua sponte when the face of the petition shows untimeliness in filing).

[71] Powers v. District Court of Tulsa County, 2009 OK 91, ¶ 16, 227 P.3d 1060, 1072-1073.

[72] Christian v. Gray, 2003 OK 10, ¶ 45, 65 P.3d 591, 609 (a trial court's exercise of judicial discretion is based upon fixed principles).

[73] Oklahoma Schools Risk Management Trust v. McAlester Public Schools, 2019 OK 3, ¶ 13, 457 P.3d 997, 1000; In re Guardianship of Stanfield, 2012 OK 8, ¶ 27, 276 P.3d 989, 1001.

[74] Hall v. Galmor, 2018 OK 59, n. 49, 427 P.3d 1052, 1062, citing J.P. Morgan Chase Bank Nat'l Ass'n v. Eldridge, 2012 OK 24, ¶ 7, 273 P.3d 62, 65 (quoting Hendrick v. Walters, 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234; In re Estate of Doan, 1986 OK 15, ¶ 7, 727 P.2d 574, 576).

[75] Hunsucker v. Fallin, 2017 OK 100, ¶3, 408 P.3d 599, 602.

[76] See, e.g., Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 126, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (discussing difference between Article III standing and principles including a (1) prohibition on a litigant raising another person's legal rights, (2) the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and (3) the requirement that a plaintiff's complaint fall within the zone of interests protected by the statute invoked); Horne v. Flores, 557 U.S. 433, 445, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (standing is a threshold issue and "an essential and unchanging part of the case-or-controversy requirement of Article III").

[77] See, e.g., Hampton v. Clendinning, 1966 OK 51, 416 P.2d 617 (plaintiff's cause of action at the time it was filed did not exist in Oklahoma due to doctrine of intrafamily immunity and prohibition issued to prevent further exercise of jurisdiction against the defendant); Bd. of Cnty. Comr's of Cleveland Cnty. v. City of Norman,1970 OK 126, 472 P.2d 910 (District Court lacked jurisdiction that was proper before Corporation Commission); Perry v. Snyder, 1919 OK 140, 181 P. 147 (proceeding for ejectment lacked a required element when the proceeding was based upon a void tax deed issued at a time when not authorized by statute); Fehr v. Black Petroleum Corporation, 1924 OK 903, 229 P. 1048, 1051 (a jurisdictional issue was presented when an Oklahoma constitutional provision was not self-executing and a statute was created providing a penalty to be recovered at the suit of the State for a violation of this section of the constitution, and the statutory remedy was available only in a suit brought by the State through its proper officers, and suit was not available to the individual).

[78] Andrew v. Depani-Sparks, 2017 OK 42, ¶¶ 35-38, 396 P.3d 210, 223-224.

[79] Conterez v. O'Donnell, 2002 OK 67, n. 5, 58 P.3d 759, 761 (collecting authority, and noting the adequate opportunity which occurred in the Supreme Court to challenge the sua sponte actions by a different court).

[80] Salazar v. City of Oklahoma City, 1999 OK 20, n. 17, 976 P.2d 1056, 1062 (collecting cases). See also Nelson v. Pollay, 1996 OK 142, n. 35, 916 P.2d 1369, 1376.

[81] Hedges v. Hedges, 2002 OK 92, ¶ 22, 66 P.3d 364, 372-373 (in an equitable proceeding the circumstances called for an equitable result which required giving a party a fair opportunity to litigate a time-bar issue raised by filings in the trial court).

[82] 585 U.S. ___, 138 S.Ct. 1916, 201 L.Ed.2d 313 (2018).

[83] Gill, 585 U.S. ___, 138 S.Ct.1916, 1933-1934.

[84] Gill, 585 U.S. ___, 138 S.Ct.1916, 1934.

[85] Gill, 585 U.S. ___, 138 S.Ct.1916, 1934.

[86] Gill, 138 S.Ct. 1916, 1933 ("the fundamental problem with the plaintiffs' case as presented on this record. It is a case about group political interests, not individual legal rights.").

[87] State ex rel. Howard v. Oklahoma Corp. Commission, 1980 OK 96, n. 8, 614 P.2d 45, 51 (one type of publici juris controversy adjudicates a "public right").

[88] Diller, Paul A., The City and the Private Right of Action, 64 Stan. L. Rev. 1109, 1116 (2012). See also Barnett, Randy E., Foreward: Four Senses of the Public Law-Private Law Distinction, 9 Harv. J.L. & Pub. Pol'y 267, 267-268 (1986) (different approaches to public law discussed); Nicholas, Barry, An Introduction to Roman Law (Oxford: Clarendon Press, 1962) 208 (historical approach discussing public-law controversies in Roman law).

[89] Draper v. State, 1980 OK 117, 621 P.2d 1142, (a legal challenge to legislation containing appropriations to the State Board of Education for the funding of common schools was publici juris).

[90] See also Frank v. Gaos, ___ U.S. ___, 139 S.Ct. 1041, 1043-1044, 203 L.Ed.2d 404 (2019) (" Because there remain substantial questions about whether any of the named plaintiffs has standing to sue in light of our decision in Spokeo, Inc. v. Robins, 578 U. S. ___, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), we vacate the judgment of the Ninth Circuit and remand for further proceedings.").

[91] Dean Edwin Chemerinsky divides justiciability into the four distinct doctrines of standing, ripeness, mootness, and political question; and he notes the first three are constitutional while the fourth is prudential. See Edwin Chemerinsky, A Unified Approach to Justiciability, 22 Conn. L. Rev. 677, 677-78, 683 (1990).

[92] Appellants' Record on Accelerated Appeal, Vol II, Tab 12, Plaintiffs' Response in Opposition to Intervenors' Motion for Summary Judgment, p. 13, citing Independent School Dist. No. I-20 of Muskogee County v. Oklahoma State Dept. of Education, 2003 OK 18, ¶ 17, 65 P.3d 612.

[93] State ex rel. State Ins. Fund v. JOA, Inc., 2003 OK 82, ¶¶ 6--7, 78 P.3d 534, 536--537. See also State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, n. 22, 359 P.3d 1122, 1129.

[94] Plaintiffs' Motion for Summary Judgment, pgs. 6-7.

70 O.S.2011 § 18-109.7:

A. Pursuant to Section 12a of Article X of the Oklahoma Constitution, there is hereby created in the State Treasury a fund to be designated as the "Common School Fund". Monies from this fund shall be apportioned by the State Treasurer for distribution as provided for by the Legislature through the State Aid Formula for the benefit of the common schools of this state.

B. Beginning January 1, 1991, taxes collected on public service corporation property for the benefit of the common schools pursuant to paragraph 2 of subsection B of Section 12a of Article X of the Oklahoma Constitution, except that portion of such taxes collected for the benefit of school districts in this state pursuant to Section 26 of Article X of the Oklahoma Constitution and that portion of such taxes collected for purposes of raising money for a building fund for a school district pursuant to Section 9 of Article X of the Oklahoma Constitution, and taxes collected on locally assessed commercial/industrial real and personal property for the benefit of the common schools pursuant to paragraph 2 of subsection C of Section 12a of Article X of the Oklahoma Constitution, except that portion of such taxes collected for the benefit of school districts in this state pursuant to Section 26 of Article X of the Oklahoma Constitution and that portion of such taxes collected for purposes of raising money for a building fund for a school district pursuant to Section 9 of Article X of the Oklahoma Constitution, together with any revenues accruing to it pursuant to law and any money appropriated to it by the Legislature shall be paid to the State Treasurer to be placed in the Common School Fund.

C. Beginning July 1, 1991, gross production taxes collected on oil and gas which are apportioned for common school purposes pursuant to the provisions of Section 1004 of Title 68 of the Oklahoma Statutes, motor vehicle taxes and fees collected pursuant to the Oklahoma Vehicle License and Registration Act which are apportioned for common school purposes pursuant to the provisions of Section 1104 of Title 47 of the Oklahoma Statutes and taxes levied upon rural electric cooperative corporations which are apportioned for common school purposes pursuant to the provisions of Section 1806 of Title 68 of the Oklahoma Statutes together with any revenues accruing to it pursuant to law and any money appropriated to it by the Legislature shall be paid to the State Treasurer to be placed in the Common School Fund.

D. The provisions of this section shall not have the force and effect of law unless and until the voters of the State of Oklahoma approve amendments to Section 12a of Article X of the Oklahoma Constitution contained in Enrolled House Joint Resolution No. 1005 of the 1st Extraordinary Session of the 42nd Oklahoma Legislature.

[95] Election was held on June 26, 1990, State Question No. 634, Legislative Referendum No. 282, proposed amending Okla. Const. Art 10 §§ 9, 10, & 12a, and the proposed amendments were rejected by the people with a vote: Yes-110,669; No-132,907. The June 26th election also had on the ballot Legislative Referendum No. 281 (proposed amendment to Okla. Const. Art. 13 § 5, rejected), Legislative Referendum No. 283 (proposed amendment to Okla. Const. Art. 11 § 3, rejected), and Legislative Referendum No. 283 (proposed amendment to Okla. Const. Art. 13 § 4, rejected). See Oklahoma State Election Board, https://www.ok.gov/elections/documents/1990_RESULTS.pdf.

[96] After the defeat in the election held June 26, 1990, and prior to the "effective date" of January 1, 1991, listed in legal publications for § 18-109.7, additional statewide elections held during the 1990 calendar year were held on: 1. August 28, 1990 (a primary election which included Legislative Referendum No. 277 (amending Okla. Const. Art 2 § 19), Legislative Referendum No. 278 (amending Okla. Const. Art. 2§ 24), Legislative Referendum No. 279 (amending Okla. Const. Art. 10 § 35), and Legislative Referendum No. 280 (amending Okla. Const. Art. 10 § 27B); 2. September 18, 1990 (runoff primary election which included Initiative Petition No. 340 (creating Okla. Const. Art. 29), Initiative Petition No. 346 (adding Okla. Const. Art. 5 § 17A), Legislative Referendum No. 286 (amending Okla. Const. Art. 28 § 8); 3. November 6, 1990 (general election which included Legislative Referendum No. 285 (defeating proposed amendment to Okla. Const. Art. 28 § 6), and Legislative Referendum No. 287 (creating Okla. Const. Art. 10 § 6c). See Oklahoma State Election Board website for results of 1990 elections cited in note 95 supra. No statewide election in 1990 after the June 26th election proposed constitutional amendments as those proposed on June 26, 1990.

[97] House Bill No. 1017 states § 93 would become effective on January 1, 1991. Oklahoma Sess. Laws Supp., Laws 1989, 1st Extra. Sess. C. 2, § 129.

The current Thomson Reuters (West) publications show an effective date of "Jan. 1, 1991" for 70 O.S. §18-109.7. See (1) Oklahoma Statutes 2011, Vol. 7, Titles 70-85, at pg. 295, § 18-109.7, and (2) Oklahoma Statues Annotated, (bound volume), Title 70 Schools, Ch. 1, Articles VII to End, Chs. 2-8, February 8, 2018, pgs. 226-227, § 18-109.7.

[98] 68 O.S.2011 § 1806 (b)(2):

Beginning July 1, 1991, if the amendment to Section 12a of Article X of the Constitution of the State of Oklahoma2 contained in Enrolled House Joint Resolution No. 1005 of the 1st Extraordinary Session of the 42nd Oklahoma Legislature is approved by the people, the remaining ninety-five percent (95%) of all monies collected under this act shall be remitted to the State Treasurer to be deposited in the Common School Fund.

[99] See (1) Oklahoma Statutes 2011, Vol. 6, Titles 63-69, pg. 1106, 68 O.S. 1806, editorial note no. 2, and (2) Oklahoma Statues Annotated, (bound volume), Title 68 Revenue and Taxation, §§ 1001 to 2357.403, pg. 523, 68 O.S. § 1806, editorial note no. 2.

[100] Okla. Const. Art. 10 § 12a: "All taxes collected for the maintenance of the common schools of this State, and which are levied upon the property of any railroad company, pipe line company, telegraph company, or upon the property of any public service corporation which operates in more than one county in this State, shall be paid into the Common School Fund and distributed as are other Common School Funds of this State."

[101] Linthicum v. School Dist. No. 4 of Choctaw Cnty., 1915 OK 594, 149 P. 898, ("This latter contention, it seems to us, is well taken . . . it is impossible to conclude that the people in adopting said section 12a intended it to go into effect without the aid of additional legislation.").

[102] Okla. Sess. Laws 1989, 1st Extra. Sess. c. 2, § 93.

[103] 68 O.S.1991 § 1004(4)(b) (providing if the proposed amendment to Okla. Const. Art. 10, § 12a according to the enrolled House Joint Resolution No. 1005 was approved by the People, then a certain share of sum collected from the gross production tax described would be remitted to the State Treasurer for the common school fund).

[104] Okla. Sess. Laws 1999, 1st Extra. Sess. c. 1, § 3.

[105] Okla. Sess. Laws 1989, 1st Extra. Sess. c. 2, § 94.

[106] 47 O.S.1991 § 1104(A)(1)(b) & § 1104(B).

[107] 47 O.S.1991 § 1104(A)(1)(b) was amended by Okla. Sess. Laws 1995, c.305, § 1, by removing the reference to the legislative referendum and its stated percentage to be remitted to the State Treasurer for the Common Fund, and added stated percentages apportioned to school districts in 47 O.S. § 1104(A)(1)(a).

[108] Okla. Sess. Laws 1997, c.294, § 1.

[109] For example, the Education Reform Revolving Fund was created with dedicated revenues to be expended for the purposes stated in H. B. No. 1017. See 62 O.S.Supp.2011 §§ 34.88, 34.89, 18-400.

[110] Inclusion of an enacted statute in a subsequent decennial codification is a type of amendment pursuant to Okla. Const. Art. 5 § 43, and this new codification will relate back to the statute's creation and cure a procedural defect in the original enactment, such as the original legislation's title. Allen v. Retirement System for Justices & Judges, 1988 OK 99, 769 P.2d 1302, 1305; Southwestern Bell Telephone Co. v. Oklahoma Corp. Commission, 1994 Ok 142, 897 P.2d 1116, n. 13 & 1123-1124 (Opala, J., concurring). When a statutory right is created which did not exist at the common law and the same statute fixes the conditions upon which the right may be asserted, the conditions are an integral part of the right thus granted and are substantive conditions. Hughes Drilling Company v. Morgan, 1982 OK 77, 648 P.2d 32, 35. Provisions in 70 O.S. § 18-109.7 did not exist at common law, the condition on § 18-109.7 taking effect is a substantive condition for the purpose of applying Allen, and the new codification with each decennial publication could not make the § 18-109.7 legally effective in the face of its substantive condition limiting effectiveness.

[111] 70 O.S.2011 § 18-103, states in part: "There shall be apportioned and disbursed annually by the State Board of Education, from appropriations made by the Legislature for this purpose . . . such sums of money as each school district may be qualified to receive under the provisions of this article."

70 O.S.2011 § 18-105, states in part: "The State Board of Education shall furnish the Director of the Office of Management and Enterprise Services with a copy of the apportionments made from the funds appropriated for each fiscal year to each of the several school districts of the state, and warrants shall be drawn by the State Treasurer against appropriations for each fiscal year in accordance with such apportionments."

[112] Reynolds v. Fallin, 2016 OK 38, ¶ 15, 374 P.3d 799 (the expressed legislative intent of the Legislature to spend public moneys for an identified purpose allowed by law is sufficient to conclude an appropriation was made); Calvey v. Daxon, 2000 OK 17, ¶¶ 22-23, 997 P.2d 164 (Legislature has authority to transfer existing revenues and unappropriated money from one fund to another); Coffee v. Henry, 2010 OK 4, ¶ 14, 240 P.3d 1056, 1061 (Kauger, J., concurring) ("this state is committed to the rule that no particular words need be used in making an appropriation, and that an appropriation may be implied where the language used reasonably leads to the conclusion that such was the intention of employment of those words.") quoting Riley v. Carter, 1933 OK 448, 25 P.2d 666, 672.

[113] Miller v. Childers, 1924 OK 675, 238 P. 204, 208 ("it would seem that everything authorized by law to be paid out of the state treasury is payable out of the general fund, if not specially made payable out of some specific fund") quoting with approval Proll v. Dunn, 80 Cal. 220, 22 P. 143 (1889).

[114] See, e.g., Enrolled House Bill No. 3513, § 16 (54th Okla. Legis., 2nd Sess., eff. July 1, 2014) ("The State Board of Education is authorized to request the Office of Management and Enterprise Services to transfer appropriated funds to the appropriate dispensing fund.").

[115] Oklahoma Tax Commission v. Liberty National Bank & Trust Co., 1955 OK 208, 289 P.2d 388, 392-393 (taxpayer's long-used accounting practice not expressly prohibited by statute and acquiesced in by Tax Commission could be used for interpreting statutes).

The long-held construction placed on a statute by officers in the discharge of their duties is a rule of judicial interpretation based upon an existing valid statute the officials are construing or interpreting. Murray County v. Homesales, Inc., 2014 OK 52, 330 P.3d 519 (The long-held construction placed on a statute by officers in the discharge of their duties is a rule of judicial interpretation for a statute).

[116] 70 O.S.2011 § 200.1. Paragraph "B" of this statute states: "The State Department of Education shall retain not less than one and one-half percent (1 1/2%) of the total funds appropriated for financial support of schools, to be used to make midyear adjustments in State Aid and which shall be reflected in the final allocations."

[117] Southwestern Bell Telephone Co. v. Oklahoma County Excise Bd., 1980 OK 97, 618 P.2d 915, 921 (good faith reliance on a statute may be considered when determining prospective invalidity); Campbell v. White, 1993 OK 89, 856 P.2d 255, 262 (we have made our rulings prospective in effect when the statute involved may change an appropriated budget); State ex rel. Nesbitt v. Ford, 1967 OK 186, 434 P.2d 934, 940 (Court will withhold a writ of mandamus when confusion to the public purse would result from its issuance).

[118] We have not given the parties an opportunity to comment on the Court taking judicial notice of the website of the State of Oklahoma Election Board. The lack of an opportunity for comment by the parties is of no legal consequence since we assume for the purpose of this controversy an interest similar to that expressed in the statute. See, e.g., Matter of M.A.H., 1993 OK 92, 855 P.2d 1066 (discussed party's opportunity to challenge judicial notice) citing, Callison v. Callison, 1984 OK 7, 687 P.2d 106, 112.

[119] Knight ex rel. Ellis v. Miller, 2008 OK 81, ¶ 11, 195 P.3d 372, 375, citing Democratic Party of Oklahoma v. Estep, 1982 OK 106, 652 P.2d 271, 274.

[120] See, e.g., Murray County v. Homesales, Inc., 2014 OK 52, ¶¶ 9-15, ¶¶ 16-20, 330 P.3d 519, 524-527, 527-529 (statutes did not grant a county clerk the authority to sue to collect unpaid documentary stamp taxes, the Legislature did not intend for a county to have direct enforcement authority to collect these unpaid taxes, but a county had standing to seek declaratory relief to adjudicate local taxes are due).

[121] Holbert v. Echeverria,1987 OK 99, 744 P.2d 960, 963 (explaining a statutory regulatory scheme does not necessarily create a judicially enforceable right of action, and adopting three prongs of the four-prong test in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), wherein one of the prongs is whether the statute provides some intent, explicit or implicit, that the legislative body intended the party to possess a judicial remedy to enforce a statute). See also Murray County v. Homesales, Inc., 2014 OK 52, at ¶¶ 9-15, 330 P.3d at 524-527 (county lacked direct enforcement authority to enforce statute). See also Fehr v. Black Petroleum Corporation, supra at notes 69 and 77.

[122] 2014 OK 52, 330 P.3d 519.

[123] Murray Cnty., 2014 OK 52, at ¶ 18, 330 P.3d at 528, explaining Independent School District No. 9 v. Glass, 1982 OK 2, 639 P.2d 1233 (school district possessed standing), and Indep. Sch. Dist. No. 5 of Tulsa County v. Spry, 2012 OK 98, 292 P.3d 19 (school districts did not possess standing).

[124] See, e.g., State ex rel. Ind. School Dist. No. 1 Okla. Cnty. v. Barnes, 1988 OK 70, 762 P.2d 921, 923 (a school district has a direct and pecuniary interest in protecting the revenues used to support it so as to have standing to bring an action for mandamus to compel compliance with a statutory rule requiring distribution of unprotested ad valorem tax revenue), explaining State ex rel. Tulsa Classroom Teacher's Association, Inc. v. Board of Equalization, Tulsa County, 1979 OK 129, 600 P.2d 861.

[125] Independent School Dist. No. 9 of Tulsa Cnty. v. Glass,1982 OK 2, 639 P.2d 1233, 1237.

[126] Glass, 639 P.2d 1233, 1237.

[127] 70 O.S.2011 § 18-103:

There shall be apportioned and disbursed annually by the State Board of Education, from appropriations made by the Legislature for this purpose and from funds derived from other sources provided by law for this purpose, to the several school districts of the state, such sums of money as each school district may be qualified to receive under the provisions of this article. The methods of apportionment and disbursements contained herein shall remain in force until the same are amended or repealed by the Legislature. The State Board of Education will furnish the Legislature each year the recommended use of any new educational funds, listing priorities and percentage of new funds recommended for each priority item listed.

[128] 70 O.S.Supp. 2013 § 3-104 (3)(a) states in part: "Appropriations therefor shall be made in lump-sum form for each major item in the budget as follows: a. State Aid to schools." See also Southern Corrections Systems, Inc. v. Union Public Schools, 2002 OK 93, ¶ 16, 64 P.3d 1083, 1089 ("Funding for public education through State aid is appropriated by the Legislature and administered by the State Board of Education.").

[129] We have not provided the parties with an opportunity to comment on our use of a State of Oklahoma website to show the nature of State Aid as an appropriation of State funds. This lack of opportunity for comment has no legal consequences because the website is the official website for the OSDE, a party to the litigation, and the nature of State Aid funds as a State appropriation is recognized by all parties in their filings.

[130] OSDE, Oklahoma School Finance Document: Technical Assistance Document, Sources of Revenue State Formula Penalties/Adjustments, Financial Services Division, State Aid Section, Revised December 2018, pg. 9; OSDE, School Finance: Technical Assistance Document, Sources of Revenue, State Aid Formula, Penalties/Adjustments, Policies/Procedures, Financial Services Division, Revised July 2009, pg. 11.

The 2018 report states it is issued by the OSDE as authorized by 70 O.S. § 3-104, and available through the agency website, at https://sde.ok.gov/sites/default/files/documents/files/FY%202019%20TAD%2012.11.18%20mp_1.pdf. The 2009 report is issued by the OSDE and available through the agency website at sde.ok.gov/sde/sites/ok.gov.sde/files/TechAsstDoc.pdf.

[131] Battles v. State ex rel. Oklahoma Commission for Crippled Children, 1951 OK 313, 244 P.2d 320, 322 (a constitutional issue not expressly raised by the parties but a necessary part of the pled controversy and involving public revenue and taxation should be addressed by the Court).

[132] Reynolds v. Fallin, 2016 OK 38, ¶¶ 26-27, 374 P.3d 799, 811-812.

[133] 1980 OK 36, 608 P.2d 1139.

[134] 1968 OK 118, 462 P.2d 536.

[135] City of Sand Springs, 608 P.2d at 1150.

We have noted the phrase "special fund" may be used to describe different types of funds which must be analyzed to determine their legal attributes. We need not catalogue the different types of "special funds" to adjudicate this appeal. See, e.g., Boswell v. State, 1937 OK 727, 74 P.2d 940, 950 (discussing different uses for the phrase "special fund" and noting the difference between (1) a special fund created by a levy of a specific tax for a specific purpose and distinguished from a general revenue fund as used in Edwards v. Childers, 1924 OK 652, 228 P. 472, and (2) in Baker v. Carter, 1933 OK 484, 25 P.2d 747 where the phrase refers to a special fund generated by income to pay for a self-liquidating project).

[136] 1924 OK 652, 228 P. 472.

[137] Edwards v. Childers, 1924 OK 652, 228 P. 472, 477.

[138] Edwards v. Childers, 1924 OK 652, 228 P. at 477, quoting with approval Commonwealth ex rel. Bell v. Powell, 249 Pa. 144, 94 A. 746, 750 (1915).

[139] See, e.g., Oklahoma Education Lottery Revolving Fund (3A O.S.Supp.2019 § 713); Education Reform Revolving Fund (62 O.S.Supp.2017 § 34.89); Common Education Technology Revolving Fund (62 O.S.Supp.2012 § 34.90); Public School Classroom Support Revolving Fund (70 O.S.Supp.2012 § 1-123); School Lunch Workshop Revolving Fund, and the Statistical Services Revolving Fund (70 O.S.Supp.2013 § 3-104); Curriculum Materials Revolving Fund (70 O.S.Supp.2012 § 3-109); Oklahoma Teacher Recruitment Revolving Fund (70 O.S.Supp.2017 § 6-132); Teachers' Competency Examination Revolving Fund (70 O.S.Supp.2012 § 6-191); Education Leadership Oklahoma Revolving Fund (70 O.S.Supp.2012 § 6-204.3); Oklahoma National Board Certification Revolving Fund (70 O.S.Supp.2012 § 6-204.4); Professional Development Institutes Revolving Fund (70 O.S.Supp.2012 § 6-204.5); Oklahoma School Psychologist, Speech-Language Pathologist, and Audiologist National Certification Revolving Fund (70 O.S.Supp.2012 § 6-206.1); Cameras for School Bus Stops Revolving Fund (70 O.S.Supp.2019 § 9-119); Personal Financial Literacy Education Revolving Fund (70 O.S.Supp.2017 § 11-103.6h); Oklahoma Special Education Assistance Fund (70 O.S.Supp.2012 § 13-114.1); Oklahoma Early Intervention Revolving Fund (70 O.S.Supp.2013 § 13-124.1); Adult Education Revolving Fund (70 O.S.Supp.2015 § 14-133); and the Education Reform Revolving Fund (70 O.S.Supp.2012 § 18-400).

[140] We also address the possibility of funding State Aid from a source other than the general revenue fund, but nevertheless lapsing due to language in an appropriations Bill at ¶¶ 93-98 herein.

[141] We need not analyze hypothetical issues related to a corrected apportionment of State Aid or if a retroactive deemed carryover in a general fund for a former fiscal year is created thereby, or if a corrected apportionment could be used for retroactively reducing State Aid calculations in former years, or the potential effect, if any, on former Estimates of Needs and Financial Statements, or the effect of recent legislation such as the Legislature's 2020 amendment in House Bill 3964 and relating to a carryover penalty. See, e.g., 70 O.S. 2011 §5-157, eff. July 1, 1996, (deficit budget prohibited); 70 O.S.2011 § 18-200.1 (G) (school district State Aid reduced from carryover in school district's general fund); 70 O.S.2011 § 18-104 (Estimate of Needs and Financial Statement procedure); 2020 Okla.Sess.Law Serv., c. 128, § 1 (H.B. 3964) (West), (approved May 21, 2020). The audit of Western Heights School District submitted by plaintiffs on appeal does not indicate whether the State Auditor and Inspector considered such issues.

[142] Riley v. Carter, 1933 OK 448, 25 P.2d 666, 675-676.

[143] Liddell v. Heavner, 2008 OK 6, ¶ 16, 180 P.3d 1191, 1199 (absent ambiguity the plain language of the Constitution is applied as an expression of intent from the Framers proposing it and the People adopting it); Oklahoma Electric Cooperative, Inc. v. Oklahoma Gas & Electric Co., 1999 OK 35, ¶ 7, 982 P.2d 512, 514 (same).

[144] See, e.g., Oklahoma State Department of Education, 2013-2014 Annual Report: Statistical Report on Oklahoma Schools and the State Department of Education (April 2015), at p. 3, stating State-Appropriated 2013-2014 Revenue (non-dedicated) ($2,299,245,013.00), and State-Dedicated Revenue 2013-2014 ($474,946,865); Actual 2013-2014 Average Daily Attendance (ADA) (639,376.27); Actual 2013-2014 Average Daily Membership (ADM) (675,534.35); Actual 2013-2014 Weighted ADM (1,076,940.88); and Weighted ADM used for State Aid (1,088,587.43); Oklahoma State Department of Education, 2012-2013 Annual Report: Statistical Report on Oklahoma Schools and the State Department of Education (April 2014), at p. 3, stating the appropriation amounts as well as ADAs and ADMs. See https://sde.ok.gov/sites/ok.gov.sde/files/documents/files/2013-14%20Annual%20Report%20Final.pdf and https://sde.ok.gov/sites/ok.gov.sde/files/documents/files/Corrected%202012-13%20Annual%20Report.pdf.

[145] There is a presumption legislation is constitutional. Wilson v. Fallin, 2011 OK 76, ¶ 16, 262 P.3d 741, 746. An assumed constitutional $42.00 would be deemed to have been paid first in any apportionment to a school district. City of Del City v. Fraternal Order of Police, Lodge No. 114, 1993 OK 169, 869 P.2d 309, 315 (a constitutionally-imposed funding obligation must be satisfied prior to a legislatively-imposed funding obligation), discussing In Protest of Kansas City So. Ry. Co., 1932 OK 328, 11 P.2d 500, 509 (1932). Further, the Legislature determines fiscal policy, and a specific grant of grant of authority in the Constitution, upon any subject whatsoever, such as a $42.00 specified amount, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever. Naifeh v. State ex rel. Oklahoma Tax Commission, 2017 OK 63, ¶ 11, 400 P.3d 759, 763; Okla. Const. Art. 5 § 36.

[146] Fair School Finance Council of Oklahoma, Inc. v. State, 1987 OK 114, 746 P.2d 1135, 1149.

[147] 1955 OK 229, 287 P.2d 704.

[148] 1955 OK 229, 287 P.2d at 707 (explanatory phrase added).

[149] 1955 OK 229, 287 P.2d at 707.

[150] 1952 OK 80, 242 P.2d 427.

[151] Fortinberry Co. v. Blundell, 242 P.2d at 431, citing Oklahoma Tax Commission v. Fortinberry Company, Inc., 1949 OK 75, 207 P.2d 301.

[152] Fortinberry Co. v. Blundell, 242 P.2d at 433 (the 1937 Act became a part of plaintiffs' contract, and could not be repealed or amended without making adequate provision to meet the existing obligation of plaintiffs' contract).

[153] Fortinberry Co. v. Blundell, 242 P.2d at 434.

[154] Fortinberry Co. v. Blundell, 242 P.2d at 431.

[155] Fortinberry Co. v. Blundell, 242 P.2d at 433.

[156] 1940 OK 326, 103 P.2d 933.

[157] Fortinberry, 242 P.2d at 434, citing Carter v. Miley, 1940 OK 326, 103 P.2d 933.

[158] State ex rel. Telle v. Carter, 1934 OK 702, 39 P.2d 134, 140.

[159] Protest of Trimble, 1931 OK 347, 300 P. 406, 409, 410.

[160] Separation of powers, case or controversy, appropriations clause, and other constitutional concepts which would prevent a court from enforcing a lapsed appropriation are not novel applications of law. See, e.g., Office of Personnel Management v. Richmond, 496 U.S. 414, 424-425, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990) (Appropriations Clause application and noting "Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury."); City of Houston, Tex. v. Dep't of Hous. & Urban Dev., 306 U.S.App.D.C. 313, 24 F.3d 1421, 1424 (D.C. Cir. 1994) ("It is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation."); National Ass'n of Regional Councils v. Costle, 184 U.S.App.D.C. 98, 564 F.2d 583, 589-590 (D.C.Cir. 1977) (unless specifically granted the power, a court "simply lacks the power to order the obligation of public funds, regardless of how appropriate a remedy that order would be"); 31 U.S.C.A. § 1552 (a) ("On September 30th of the 5th fiscal year after the period of availability for obligation of a fixed appropriation account ends, the account shall be closed and any remaining balance (whether obligated or unobligated) in the account shall be canceled and thereafter shall not be available for obligation or expenditure for any purpose.).

[161] State ex rel. Board of Ed. of Independent School Dist. No 17, etc., v. State Bd. of Education, 1955 OK 305, 295 P.2d 279, 280 ("We are unable to issue a writ of mandamus requiring a reapportionment of State Equalization Aid without facts which would enable us to include in the order the amounts that should be reappropriated to the respective school districts.").

[162] Movants to Quash Grand Jury Subpoenas v. Powers, 1992 OK 142, 839 P.2d 655, 656; Ex Parte McNaught, 1909 OK 37, 1909 OK CR 3, 100 P.27, 31.

[163] Consolidated Grain & Barge Co. v. Structural Systems, Inc., 2009 OK 14, ¶¶ 10-11, 212 P.3d 1168, 1171-1172 (statute of repose marks the boundary of a substantive right); Neer v. State ex rel. Oklahoma Tax Commission, 1991 OK 41, ¶ 2, 982 P.2d 1071 (legislatively created mandatory time barrier used to deny taxpayer's refund was similar to a statute of repose).

[164] Betts v. Commissioners of Land Office, 1910 OK 51, 110 P. 766, 770.

[165] Southwestern Bell Telephone Co. v. Oklahoma Corp. Commission, 1994 OK 142, 897 P.2d 1116, 11120, quoting Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942) (explaining importance of a judicial stay in an administrative appeal).

[166] 1980 OK 36, 608 P.2d 1139.

[167] City of Sand Springs, 608 P.2d at 1149.

[168] 1924 OK 652, 228 P. 472.

[169] City of Sand Springs, 1980 OK 36, 608 P.2d at 1149, discussing Edwards v. Childers, 608 P.2d at 1149.

[170] 1910 OK 47, 107 P. 159.

[171] Edwards, 228 P. at 475-476.

[172] Edwards, 228 P. at 475.

[173] Edwards, 228 P. at 475.

[174] Edwards, 228 P. at 476.

[175] Clay v. Independent School Dist. No. 1 of Tulsa Cnty, 1997 OK 13, 935 P.2d 294, 304 ("A writ [of mandamus] will issue to compel a board to make appropriations required by constitutional or statutory provisions."); State Highway Commission v. Green--Boots Const. Co., 1947 OK 221, 187 P.2d 209, 214 (The rule is well established that a writ of mandamus may not lawfully issue to control a decision of an officer vested with discretion, but mandamus will lie to correct a gross abuse of discretion by an official acting wholly through fraud, caprice, or by purely arbitrary decision and without reason.).

[176] In re De-Annexation of Certain Real Property from City of Seminole, 2007 OK 95, ¶ 13, 177 P.3d 551, 555, relying on R. R. Tway, Inc. v. Oklahoma Tax Commission, 1995 OK 129, 910 P.2d 972; Tate v. Browning--Ferris, Inc., 1992 OK 72, n. 36, 833 P.2d 1218, 1226; and Stallings v. Oklahoma Tax Commission, 1994 OK 99, 880 P.2d 912, 917--918.

[177] Young v. Station 27, Inc., 2017 OK 68, ¶ 23, 404 P.3d 829, 841-842 (concluding a plaintiff's claim in District Court was governed by a statute and not common-law public policy tort, in part because of the rule where the common law provides a remedy and another remedy is provided by statute, the statutory remedy is merely cumulative unless the statutory remedy declares itself to be exclusive).

[178] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶25, 326 P.3d 496, 507.

[179] St. Paul Fire & Marine Ins. Co. v. Getty Oil, 1989 OK 139, 782 P.2d 915, 920 (by defining the perimeters of the substantive right a statute of repose "in effect adds an additional element to tort claims enumerated thereunder"); Neer v. State ex rel. Oklahoma Tax Commission, 1999 OK 41, ¶ 19, 982 P.2d 1071, 1078-1079 (defining a statute of repose).

[180] Clay v. Independent School Dist. No. 1 of Tulsa Cnty, 1997 OK 13, n. 22, 935 P.2d 294, 305.

[181] Enrolled Senate Bill No. 2127 (54th Okla. Legis., 2nd Sess., eff. July 1, 2014); Enrolled House Bill No. 3513 (54th Okla. Legis., 2nd Sess., eff. July 1, 2014).

[182] S.B. No. 2127 appropriations §§ 1-14: § 1 (general revenue fund for public schools); § 2 (Education Reform Revolving Fund created in 62 O.S. § 34.89) § 3 (Common Education Technology Revolving Fund); § 4 (Mineral Leasing Fund appropriated to State Board of Education); § 5 (Mineral Leasing Fund appropriated to State Board of Education); § 6 (Oklahoma Education Lottery Trust Fund); § 7 (Oklahoma Education Lottery Trust Fund); § 8 (general revenue fund for public schools); § 9 (general revenue fund for the purchase of textbooks and instructional materials); § 10 (general revenue fund for public schools); § 11 (Oklahoma Education Lottery Trust Fund transfer of specific funds to the School Consolidation Assistance Fund); § 12 (Oklahoma Education Lottery Trust Fund transfer of specific funds to the School Consolidation Assistance Fund); § 13 (Oklahoma Education Lottery Trust Fund transfer of specific funds to the Teachers' Retirement System Dedicated Revenue Revolving Fund); and § 14 (Oklahoma Education Lottery Trust Fund transfer of specific funds to the Teachers' Retirement System Dedicated Revenue Revolving Fund).

[183] Maule v. Indep. Sch. Dist. No. 9, 1985 OK 110, 714 P.2d 198, 203 (notes omitted).

[184] Mariani v. State ex rel. Okla. State Univ., 2015 OK 13, n.7, 348 P.3d 194, 200.

[185] See Grisham v. City of Oklahoma City, and Woods Development Co. v. Meurer Abstract, supra at note 43, and Velasco v. Ruiz, supra, at note 44.

[186] Hunsucker v. Fallin, 2017 OK 100, ¶ 7, 408 P.3d 599, 603; Morton v. Adair County Excise Bd., 1989 OK 174, 780 P.2d 707, 709.

[187] Independent School District No. 9 v. Glass, 1982 OK 2, 639 P.2d 1233.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions
 Cite
Name
Level

 1999 OK AG 36, Question Submitted by: The Honorable Sandy Garrett , State Superintendent of Public Instruction
Cited
Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1909 OK CR 3, 100 P. 27, 1 Okl.Cr. 260, Ex parte McNaught
Cited
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1978 OK CIV APP 55, 606 P.2d 1141, FEDERAL CORP. v. INDEP. SCH. DIST. NO. 13, PUSHMATAHA CO.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 99, 744 P.2d 960, 58 OBJ 2887, Holbert v. Echeverria
Discussed
 1987 OK 114, 746 P.2d 1135, 58 OBJ 3282, Fair School Finance Council of Oklahoma, Inc. v. State
Discussed at Length
 1988 OK 53, 770 P.2d 878, 59 OBJ 1234, Silver v. Slusher
Discussed
 1988 OK 70, 762 P.2d 921, 59 OBJ 1812, State ex rel. Independent School Dist. No. 1 of Oklahoma County v. Barnes
Discussed
 1988 OK 99, 769 P.2d 1302, 59 OBJ 2452, Allen v. State ex rel. Bd. of Trustees of Oklahoma Uniform Retirement System for Justices and Judges
Discussed
 1989 OK 174, 780 P.2d 707, 60 OBJ 2190, Morton v. Adair County Excise Bd.
Discussed
 1989 OK 139, 782 P.2d 915, 60 OBJ 2835, St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.
Discussed
 1940 OK 326, 103 P.2d 933, 187 Okla. 530, CARTER v. MILEY
Discussed at Length
 1991 OK 27, 808 P.2d 672, 62 OBJ 934, Gaines v. Maynard
Discussed
 1991 OK 41, 810 P.2d 1270, 62 OBJ 1299, Sharp v. 251st Street Landfill, Inc.
Cited
 1991 OK 119, 820 P.2d 1338, 62 OBJ 3541, Federal Deposit Ins. Corp. v. Tidwell
Discussed
 1992 OK 72, 833 P.2d 1218, 63 OBJ 1507, Tate v. Browning-Ferris, Inc.
Discussed
 1992 OK 142, 839 P.2d 655, 63 OBJ 3020, Movants to Quash Grand Jury Subpoenas Issued in Multicounty Grand Jury Case No. CJ-92-4110 Before Dist. Court of Oklahoma County v. Powers
Discussed
 1993 OK 89, 856 P.2d 255, 64 OBJ 2066, Campbell v. White
Discussed
 1993 OK 92, 855 P.2d 1066, 64 OBJ 2169, M.A.H., Matter of
Discussed
 1993 OK 162, 865 P.2d 1232, 65 OBJ 33, Hendrick v. Walters
Discussed
 1993 OK 169, 869 P.2d 309, 65 OBJ 44, City of Del City v. Fraternal Order of Police, Lodge No. 114
Discussed
 1947 OK 221, 187 P.2d 209, 199 Okla. 477, STATE HWY. COMM'N v. GREEN-BOOTS CONST. CO.
Discussed
 1915 OK 594, 149 P. 898, 49 Okla. 48, LINTHICUM v. SCHOOL DIST. NO. 4 OF CHOCTAW COUNTY
Discussed
 1994 OK 99, 880 P.2d 912, 65 OBJ 2532, Stallings v. Oklahoma Tax Com'n
Discussed
 1994 OK 142, 897 P.2d 1116, 65 OBJ 4181, Southwestern Bell Telephone Co. v. Oklahoma Corp. Com'n
Discussed at Length
 1997 OK 13, 935 P.2d 294, 68 OBJ 559, Clay v. Independent School District No. 1 of Tulsa County
Discussed at Length
 1996 OK 142, 916 P.2d 1369, 67 OBJ 707, NELSON v. POLLAY
Discussed
 1952 OK 80, 242 P.2d 427, 206 Okla 261, THE FORTINBERRY CO. v. BLUNDELL
Discussed
 1937 OK 727, 74 P.2d 940, 181 Okla. 435, BOSWELL v. STATE
Discussed
 1916 OK 852, 160 P. 450, 61 Okla. 88, MODEL CLOTHING CO. v. FIRST NAT. BANK OF CUSHING
Discussed
 1955 OK 229, 287 P.2d 704, STATE v. STATE BOARD OF EDUCATION
Discussed at Length
 1955 OK 208, 289 P.2d 388, OKLAHOMA TAX COM'N v. LIBERTY NAT. BANK & TRUST CO
Discussed
 1955 OK 305, 295 P.2d 279, STATE v. STATE BOARD OF EDUCATION
Discussed
 2001 OK 78, 37 P.3d 800, 72 OBJ 2734, MCGEE v. ALEXANDER
Discussed
 1919 OK 140, 181 P. 147, 75 Okla. 24, PERRY v. SNYDER et al.
Discussed
 1932 OK 328, 11 P.2d 500, 157 Okla. 246, PROTEST OF KANSAS CITY SOUTHERN RY. CO.
Discussed
 1933 OK 448, 25 P.2d 666, 165 Okla. 262, RILEY v. CARTER
Discussed at Length
 1933 OK 456, 25 P.2d 666, 165 Okla. 202, DYSON et al. v. BUTLER.
Cited
 1933 OK 484, 25 P.2d 747, 165 Okla. 116, BAKER v. CARTER State Auditor et al
Discussed
 1933 OK 521, 25 P.2d 783, 165 Okla. 288, GREEN-BOOTS CONST. CO. v. STATE HIGHWAY COMMISSION et al.
Discussed at Length
 1999 OK 86, 991 P.2d 1006, 70 OBJ 3144, Comer v. Preferred Risk Mutual Ins. Co.
Discussed
 1909 OK 37, 100 P. 27, 23 Okla. 285, Ex parte MCNAUGHT
Cited
 1966 OK 51, 416 P.2d 617, HAMPTON v. CLENDINNING
Discussed
 1967 OK 108, 428 P.2d 272, BOARD OF CTY. COM'RS OF MARSHALL CO. v. SNELLGROVE
Discussed
 1967 OK 186, 434 P.2d 934, STATE v. FORD
Discussed
 1934 OK 702, 39 P.2d 134, 170 Okla. 50, STATE ex rel. TELLE v. CARTER
Discussed at Length
 1931 OK 347, 300 P. 406, 151 Okla. 74, PROTEST of TRIMBLE et al.
Discussed
 1910 OK 47, 107 P. 159, 25 Okla. 623, MENEFEE v. ASKEW
Discussed
 1910 OK 51, 110 P. 766, 27 Okla. 64, BETTS v. COMMISSIONERS OF THE LAND OFFICE
Discussed
 2002 OK 67, 58 P.3d 759, CONTEREZ v. O'DONNELL
Discussed
 1968 OK 118, 445 P.2d 260, DAVIS v. GUSTINE CONSTRUCTION COMPANY
Cited
 2002 OK 71, 55 P.3d 1072, OKLAHOMA PUBLIC EMPLOYEES ASSOCIATION v. OKLAHOMA DEPT. OF CENTRAL SERVICES
Discussed at Length
 1995 OK 69, 903 P.2d 293, 66 OBJ 2117, Stites v. Duit Const. Co., Inc.
Discussed
 1969 OK 118, 462 P.2d 536, STATE EX REL. HAWKINS v. OKLAHOMA TAX COMMISSION
Discussed at Length
 1970 OK 126, 472 P.2d 910, BOARD OF COUNTY COMMISSIONERS v. CITY OF NORMAN
Discussed
 1995 OK 129, 910 P.2d 972, 66 OBJ 3710, R.R. Tway, Inc. v. Oklahoma Tax Comm.
Discussed
 2002 OK 93, 64 P.3d 1083, SOUTHERN CORRECTIONS SYSTEMS, INC. v. UNION CITY PUBLIC SCHOOLS
Discussed
 2002 OK 92, 66 P.3d 364, HEDGES v. HEDGES
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed at Length
 2003 OK 18, 65 P.3d 612, INDEP. SCH. DIST. NO. I-20 OF MUSKOGEE COUNTY v. OKLA. STATE DEPT. OF EDUCATION
Discussed at Length
 2003 OK 82, 78 P.3d 534, STATE ex rel. STATE INSURANCE FUND v. JOA, INC.
Discussed
 2004 OK 16, 87 P.3d 598, CHANDLER (U.S.A.), INC. v. TYREE
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 1996 OK 40, 913 P.2d 1330, 67 OBJ 1037, Union Oil Co. v. Board of Equalization
Discussed
 2006 OK 67, 145 P.3d 1055, WORSHAM v. NIX
Discussed
 2006 OK 74, 145 P.3d 1081, MANOKOUNE v. STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.
Discussed
 2007 OK 95, 177 P.3d 551, IN RE: DE-ANNEXATION OF CERTAIN REAL PROPERTY FROM THE CITY OF SEMINOLE
Discussed
 2008 OK 6, 180 P.3d 1191, LIDDELL v. HEAVNER
Discussed
 2008 OK 81, 195 P.3d 372, KNIGHT v. MILLER
Discussed
 2009 OK 14, 212 P.3d 1168, CONSOLIDATED GRAIN & BARGE CO. v. STRUCTURAL SYSTEMS, INC.
Discussed
 2009 OK 91, 227 P.3d 1060, POWERS v. DISTRICT COURT OF TULSA COUNTY
Discussed
 2010 OK 4, 240 P.3d 1056, COFFEE v. HENRY
Discussed
 2010 OK 16, 231 P.3d 645, DEPT. OF SECURITIES ex rel. FAUGHT v. BLAIR
Discussed
 1924 OK 652, 228 P. 472, 102 Okla. 158, EDWARDS v. CHILDERS
Discussed at Length
 1924 OK 675, 238 P. 204, 107 Okla. 57, MILLER v. CHILDERS
Discussed
 2011 OK 1, 250 P.3d 305, CITY OF BROKEN ARROW v. BASS PRO OUTDOOR WORLD, L.L.C.
Discussed
 1924 OK 903, 229 P. 1048, 103 Okla. 241, FEHR v. BLACK PETROLEUM CORP.
Discussed at Length
 2011 OK 76, 262 P.3d 741, WILSON v. FALLIN
Discussed
 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELD
Discussed
 2012 OK 24, 273 P.3d 62, J.P. MORGAN CHASE BANK N.A. v. ELDRIDGE
Discussed
 2012 OK 98, 292 P.3d 19, INDEPENDENT SCHOOL DISTRICT NO. 5 OF TULSA COUNTY v. SPRY
Discussed
 2013 OK 77, 315 P.3d 359, SHEFFER v. BUFFALO RUN CASINO, PTE, INC.
Discussed
 1980 OK 36, 608 P.2d 1139, City of Sand Springs v. Department of Public Welfare
Discussed at Length
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed at Length
 1976 OK 126, 555 P.2d 581, AMERICAN BANK OF COMMERCE v. CITY OF McALESTER
Discussed
 2014 OK 52, 330 P.3d 519, MURRAY COUNTY v. HOMESALES, INC.
Discussed at Length
 2015 OK 13, 348 P.3d 194, MARIANI v. STATE ex rel. OKLAHOMA STATE UNIVERSITY
Discussed
 2015 OK 51, 353 P.3d 532, DUTTON v. CITY OF MIDWEST CITY
Discussed
 2015 OK 59, 359 P.3d 1122, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KNIGHT
Discussed
 2016 OK 38, 374 P.3d 799, REYNOLDS v. FALLIN
Discussed at Length
 2016 OK 69, 376 P.3d 212, NELSON v. ENID MEDICAL ASSOCIATES, INC.
Discussed
 2016 OK 74, 410 P.3d 1007, TIGER v. VERDIGRIS VALLEY ELECTRIC COOPERATIVE
Discussed
 1980 OK 96, 614 P.2d 45, State ex rel. Howard v. Oklahoma Corp. Commission
Discussed
 1980 OK 97, 618 P.2d 915, Southwestern Bell Tel. Co. v. Oklahoma County Excise Bd.
Discussed
 2016 OK 118, 392 P.3d 706, LAUBENSTEIN v. BODE TOWER, L.L.C.
Discussed
 2017 OK 3, 390 P.3d 238, IN THE MATTER OF THE ESTATE OF VOSE
Discussed
 2017 OK 16, 393 P.3d 715, IN THE MATTER OF K.S.
Discussed
 2017 OK 34, 394 P.3d 1224, OSAGE NATION v. BD. OF COMMISSIONERS OF OSAGE COUNTY and OSAGE NATION v. OSAGE COUNTY BD. OF ADJUSTMENT
Discussed at Length
 2017 OK 37, 394 P.3 1256, FARMACY, LLC v. KIRKPATRICK
Discussed
 2017 OK 42, 396 P.3d 210, ANDREW v. DEPANI-SPARKES
Discussed at Length
 1980 OK 117, 621 P.2d 1142, Draper v. State
Discussed
 1979 OK 129, 600 P.2d 861, STATE EX REL. TULSA CLASSROOM TEACHER'S ASSOC., INC. v. BD. OF EQUALIZATION
Discussed
 2017 OK 57, 398 P.3d 11, HENSLEY v. STATE FARM FIRE AND CASUALTY CO.
Discussed
 2017 OK 63, 400 P.3d 759, NAIFEH v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed
 2017 OK 68, 404 P.3d 829, YOUNG v. STATION 27, INC.
Discussed
 2017 OK 69, 404 P.3d 843, GRISHAM v. CITY OF OKLAHOMA CITY
Discussed at Length
 2017 OK 82, 408 P.3d 183, BOYLE v. ASAP ENERGY, INC.
Discussed
 2017 OK 100, 408 P.3d 599, HUNSUCKER v. FALLIN
Discussed at Length
 2018 OK 12, 412 P.3d 1151, GAASCH v. ST. PAUL FIRE AND MARINE INSURANCE CO.
Discussed
 2018 OK 59, 427 P.3d 1052, HALL v. GALMOR
Discussed
 2018 OK 91, 434 P.3d 941, CHRISTIAN v. CHRISTIAN
Discussed
 2018 OK 100, 436 P.3d 14, BRAITSCH v. CITY OF TULSA
Discussed
 2019 OK 3, 457 P.3d 997, OKLA. SCHOOLS RISK MANAGEMENT TRUST v. MCALESTER PUBLIC SCHOOLS
Discussed
 1980 OK 147, 618 P.2d 401, Marley v. Cannon
Discussed
 2019 OK 46, 457 P.3d 1014, VELASCO v. RUIZ
Discussed
 2019 OK 59, 451 P.3d 125, I. T. K. v. MOUNDS PUBLIC SCHOOLS
Cited
 2019 OK 84, 455 P.3d 918, VIDEO GAMING TECHNOLOGIES v. TULSA COUNTY BD. OF TAX ROLL CORRECTIONS
Discussed
 2000 OK 5, 995 P.2d 1141, 71 OBJ 398, Slagell v. Slagell
Discussed at Length
 2000 OK 17, 997 P.2d 164, 71 OBJ 721, Calvey v. Daxon
Discussed
 1982 OK 2, 639 P.2d 1233, Independent School Dist. No. 9 of Tulsa County v. Glass
Discussed at Length
 1982 OK 68, 646 P.2d 1269, State ex rel. Poulos v. State Bd. of Equalization for State of Okl.
Discussed
 1982 OK 77, 648 P.2d 32, Hughes Drilling Co. v. Morgan
Discussed
 1982 OK 106, 652 P.2d 271, Democratic Party of Oklahoma v. Estep
Discussed
 1951 OK 313, 244 P.2d 320, 206 Okla. 444, BATTLES v. STATE ex rel. OKLAHOMA COMM'N FOR CRIPPLED CHILDREN
Discussed
 1949 OK 75, 207 P.2d 301, 201 Okla. 537, OKLAHOMA TAX COMM'N v. FORTINBERRY CO.
Discussed
 1998 OK 88, 967 P.2d 1200, 69 OBJ 3098, Shamblin v. Beasley
Discussed at Length
 1998 OK 102, 977 P.2d 1040, 69 OBJ 3512, Akin v. Missouri Pacific Railroad Co.
Discussed
 1998 OK 122, 970 P.2d 182, 69 OBJ 4210, Stonecipher v. District Court
Discussed
 1999 OK 20, 976 P.2d 1056, 70 OBJ 862, Salazar v. City of Oklahoma City
Discussed
 1999 OK 35, 982 P.2d 512, 70 OBJ 1366, Oklahoma Electric Cooperative, Inc. v. Oklahoma Gas and Electric Co.
Discussed
 1999 OK 41, 982 P.2d 1071, 70 OBJ 1551, Neer v. State ex rel. Oklahoma Tax Commission
Discussed at Length
 1984 OK 7, 687 P.2d 106, Callison v. Callison
Discussed
 1984 OK 24, 681 P.2d 757, Horizons, Inc. v. Keo Leasing Co.
Discussed
 1985 OK 106, 712 P.2d 30, 57 OBJ 35, Woods Development Co. v. Meurer Abstract & Title Co.
Discussed
 1985 OK 110, 714 P.2d 198, 57 OBJ 22, Maule v. Independent School Dist. No. 9 of Tulsa County
Discussed
 1986 OK 15, 727 P.2d 574, 57 OBJ 993, Estate of Doan, Matter of
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2, Common Law to Remain in Force in Aid of General Statutes
Cited
 12 O.S. 651, New Trial - Definition - Causes for
Discussed at Length
 12 O.S. 952, Jurisdiction of Supreme Court
Cited
 12 O.S. 991, Right to Perfect Appeal to Supreme Court without Filing Motion for New Trial - Exemption
Discussed
 12 O.S. 1451, Writ of Mandamus - Issued - Function
Discussed
 12 O.S. 2001, Scope of the Oklahoma Pleading Code
Cited
 12 O.S. 2202, Judicial Notice of Adjudicative Facts
Cited
Title 3A. Amusements and Sports
 Cite
Name
Level

 3A O.S. 713, Oklahoma Education Lottery Trust Fund - Appropriations - Examination - Oklahoma Education Lottery Revolving Fund - Investments
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 1104, Apportionment
Discussed at Length
Title 59. Professions and Occupations
 Cite
Name
Level

 59 O.S. 15.1, Short Title - Declaration of Policy
Cited
Title 62. Public Finance
 Cite
Name
Level

 62 O.S. 34.88, Separate Account and Report of Monthly Revenues for Education Reform Revolving Fund - Use of Funds - Tracking of Apportionment of Revenues
Cited
 62 O.S. 34.89, Creation of Education Reform Revolving Fund
Discussed
 62 O.S. 34.90, Common Education Technology Revolving Fund
Cited
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 1004, Apportionment and Use of Proceeds of Tax
Discussed at Length
 68 O.S. 1806, Application of Tax Proceeds
Discussed at Length
Title 70. Schools
 Cite
Name
Level

 70 O.S. 18-104, Purpose of Funds - Federal Funds
Discussed at Length
 70 O.S. 5-135, System for Initiating, Recording, and Paying Contractual Obligations
Discussed at Length
 70 O.S. 6-206, Annual Salary Bonus for Certain Employees of Public School Districts
Cited
 70 O.S. 1-123, Public School Classroom Support Revolving Fund - Grants
Cited
 70 O.S. 14-133, Adult Education Revolving Fund
Cited
 70 O.S. 6-132, Oklahoma Teacher Recruitment Revolving Fund - Creation
Cited
 70 O.S. 9-119, Creation of Cameras for School Bus Stops Revolving Fund - Criteria, Process, Rules
Cited
 70 O.S. 1-105, State Department of Education - Definition - Agencies of State
Discussed
 70 O.S. 3-103, Quorum
Cited
 70 O.S. 3-104, State Board of Education - Powers and Duties
Discussed at Length
 70 O.S. 3-107, Administrative and Executive Duties
Cited
 70 O.S. 3-109, Curriculum Materials Revolving Fund
Cited
 70 O.S. 5-157, Expenditures not Approved if Exceed Budget Fund - Unlawful Acts of Officers or Employees - Obligations
Cited
 70 O.S. 6-191, Teachers' Curriculum Examination Revolving Fund
Cited
 70 O.S. 6-204, Short Title
Discussed at Length
 70 O.S. 11-103, Courses for Instruction - What to Include
Cited
 70 O.S. 13-124, Administration of Federal and State Funds Appropriated for Early Intervention Services
Cited
 70 O.S. 18-103, Appropriations
Discussed
 70 O.S. 18-105, Director of State Finance - Copy of Apportionments - Warrants
Cited
 70 O.S. 18-109, Repealed
Discussed at Length
 70 O.S. 18-116, Forfeiture and Withholding of State Aid - Issuance of Warrants - Accounting for Pupils' Attendance - Penalty for Violations
Cited
 70 O.S. 18-117, State Aid - Apportionment
Cited
 70 O.S. 18-118, Audits
Discussed at Length
 70 O.S. 18-200, Repealed
Discussed
 70 O.S. 18-400, Creation of Education Reform Revolving Fund
Cited
 70 O.S. 22-103, Annual Audit - Findings - Compliance with Governmental Auditing Standards
Cited
 70 O.S. 23-104, Definitions
Cited
Title 74. State Government
 Cite
Name
Level

 74 O.S. 212, Duties and Powers - Deputies - Audit of Books of Subdivisions of State - Cost of Examination
Cited
 74 O.S. 213, Examination of Public Institutions - Quality Control Reviews - Special Audits
Discussed at Length
 74 O.S. 227.8, Payment for Services by State Agencies - Agreements - Deposits
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA